MAX KALISH, Appellant, *v.* JULIUS KALISH et al., as Executors of JOSEPH KALISH, Deceased, et al., Respondents.

1. WILL — WHEN EQUITY HAS JURISDICTION OF ACTION FOR CONSTRUCTION. Equity has jurisdiction of an action to determine the validity of a will when the construction of a trust is involved and there is an intervening life estate under which the life tenant is in possession.

2. WHEN INTESTACY MAY BE AVOIDED. When invalid provisions of a will may be eliminated so as to leave intact the parts that are valid and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be.

3. PERPETUITIES — UNLAWFUL ACCUMULATION OF RENTS AND INCOME. A testamentary direction that upon the death of a life tenant the executors hold the property in trust with the power to collect the rents, issues and profits, and after the payment of taxes, charges and specified annuities invest the surplus in real estate, and that the estate shall not be settled for a period of five years after the death of the life tenant, final settlement to be made as soon thereafter as in the opinion of the executors will be for its best interests, is void as contravening the statutes against perpetuities, since the indefinite period named for the continuance of the trust may exceed two lives in being; and is also void as violating the statute against unlawful accumulations of rents and income where the beneficiaries are of full age.

4. WHEN VOID INTERMEDIATE TRUST MAY BE EXPUNGED WITHOUT TOTAL DESTRUCTION OF WILL. In a will which gives the testator's widow a valid life estate, a subsequent clause providing for the void trust may be expunged without destroying the will as a whole, or creating partial intestacy, when it is succeeded by a valid ultimate trust and good remainders in favor of the same legatees for whose benefit the void intermediate trust was created and under which they will take in the same proportions.

*Kalish* v. *Kalish,* 45 App. Div. 528, affirmed.

(Argued February 5, 1901; decided March 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 22, 1899, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

This action was brought to test the validity of certain pro-

tor's direction referred to, these trustees may be regarded as the mere custodians of any income in their hands which should properly be applied to the payment of necessaries furnished to them for the beneficiary ; or to the beneficiary himself with their knowledge and consent. In theory of equity it is already applied. The court simply directs the formal payment out of said fund which the trustees should have made without such direction. It seems, therefore, that in any view which may be taken of the nature of this case it is the duty of equity to interpose in aid of the plaintiff. If we should hold, as the appellants contend, that this is an action to enforce the trust, there would be no obstacle to the further conclusion that the plaintiff has such an interest in that portion of the trust fund applicable to the payment of necessaries as to give him standing in a court of equity. . But we do not think that this is in reality an action to enforce the trust. It may more properly be regarded as an action to collect the plaintiff's claim for necessaries out of funds in the hands of the defendant trustees, which the testator has directed to be applied to that purpose. The action is properly brought in equity, *First*, because the trustees can only be made liable to the extent of the income in their hands applicable to that purpose, and a court of law would have no jurisdiction to render an appropriate judgment; *second*, because the prayer for an accounting, although purely incidental, is necessary in order to enable even a court of equity to decide whether the plaintiff is entitled to recover or not. He might have succeeded in satisfactorily proving his claim, and yet not have been entitled to recover because there were no funds. Neither the diligence of counsel nor the labor of the court have brought to light a case just like the one at bar. The relation most nearly analogous to that of trustee and *cestui que trust* is that of guardian and ward. Both trustees and guardians become personally liable at law upon their contracts for necessaries made for the benefit of the *cestui que trust* and ward respectively; neither trustee nor guardian is personally liable on contracts for necessaries made by the *cestui que trust* or ward respectively. If

the estate of either *cestui que trust* or ward is ample to pay for the necessaries supplied to them it is but right that it should be applied to the satisfaction of the just claims of the creditors who have furnished the same. This has been sought to be accomplished in various ways in other states. In Massachusetts the guardian's bond has been held liable in an action at law where the guardian himself was not liable as upon contract. (*Cole* v. *Eaton*, 8 Cush. 587; *Conant* v. *Kendall*, 21 Pick. 36.) But these decisions were based upon statutory provisions which have no application here. In Virginia it has been held that a guardian's bond may be subjected in equity to the payment of a creditor's claim for necessaries furnished to the ward. (*Barnum* v. *Frost*, 17 Gratt. 398.) In Georgia it has been decided that a creditor for necessaries furnished to a trustee for his *cestui que trust* upon the faith of the estate may file a bill in equity to obtain payment for such necessaries to the extent of the income. (*Hatcher* v. *Massey*, 71 Ga. 794.) A similar case is *Kupferman* v. *McGehee* (63 Ga. 251). These cases are all so different from the one at bar that they are useful only for the purpose of showing that where similar questions have arisen in other states the courts have found some way of doing justice.

The order of the Appellate Division should, therefore, be affirmed and judgment absolute rendered for the plaintiff, upon appellants' stipulation, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, LANDON and CULLEN, JJ., concur.

Ordered accordingly.

---

JAMES R. JOHNSTON et al., Respondents, *v*. ELIZABETH DREXEL DAHLGREN, as Executrix of JOHN VINTON DAHLGREN, Deceased, Appellant.

1. CONTRACT — PLUMBING WORK PERFORMED IN VIOLATION OF REGISTRATION ACT. The failure of a master plumber to comply with the act to secure the registration of plumbers in cities (L. 1892, ch. 602), making it unlawful for him to carry on business without having previously registered with the board of health his name and address, precludes a recovery for work performed by him in violation of the statute.

2. APPLICATION OF PAYMENT UPON ILLEGAL CLAIM — QUESTIONS OF FACT. Where, in an action to foreclose a mechanic's lien, it appears that the plaintiffs, who were master plumbers and not registered under the act, had been orally employed to perform certain plumbing work, and during its progress were orally instructed by defendant to have other necessary work done, and had employed and paid mechanics to perform it, and upon the completion of all the work the defendant paid the plaintiffs a sum of money which they applied upon their plumbing bill, leaving the other items unpaid, whether the contract was entire in its nature, and on account of the illegal plumbing item was unenforceable, or with respect to work other than plumbing it was severable, and whether the payment upon the completion of the work was voluntarily made upon the plumbing bill, which might competently have been done, notwithstanding its illegality, are questions of fact, which, having been determined by a judgment unanimously affirmed by the Appellate Division, are not reviewable by the Court of Appeals.

*Johnston* v. *Dahlgren*, 48 App. Div. 537, affirmed.

(Argued February 15, 1901; decided March 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 17, 1900, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

This was an action for the foreclosure of a mechanic's lien. The plaintiffs recovered a judgment, which adjusted the amount of their lien against the defendant and directed a sale of the property in the usual form in such cases, and the judgment has been unanimously affirmed by the Appellate Division, in the second department. The case was tried before a referee. In his report, the referee premises with these words: "I do now, in deciding the issues, make and file this my decision, stating concisely the grounds upon which such issues have been decided, as follows: I find as matters of fact," etc. Thereafter, in narrative form, he states certain facts as established. They are in substance these. The defendant, in December, 1894, employed the plaintiffs, who were master plumbers, to do some plumbing work in his house, in the city of New York. The plaintiffs, at the time of the employment, had failed to register their names and addresses with the board of health of the city, as required by chapter 602 of the Laws

of 1892. After the plaintiffs had proceeded with their work, "other work, mason work, carpenter work and painting work, etc., was found to be necessary and defendant instructed plaintiffs to have this work done." During the progress of the work, the defendant had paid to the plaintiffs, on account, the sum of $1,500 and upon the completion of the work, on February 20th, 1895, there remained unpaid upon all the work the sum of $6,238.15. "On the 19th of February, 1895, the defendant handed the plaintiffs a check for the sum of $2,000 ; but did not approve for payment the items of the bill then rendered by the plaintiffs to the defendant for the work other than plumbing work, but subsequently paid several items thereof. That the defendant had not at any time approved of the remaining items for payment, but withholds unreasonably such approval." Then, after stating that the sum of $2,079.73 became due from the defendant to the plaintiffs and remained unpaid, the report continues : "I decide (1), that the plaintiffs were employing or master plumbers, * * * and that they had not complied with the provisions " etc., of the state law, in its requirement of the registration of their names and addresses with the board of health of the city, "and, therefore, they are not entitled to recover in this action for any plumbing work." "(2) That the plaintiffs applied and were free to apply the payment of $2,000, made by the defendant February 19th, 1895, on account of the plumbing item of the statement rendered on said date, but cannot recover any balance due for such plumbing item." The referee then proceeds to state the amount which the plaintiffs were entitled to recover otherwise and that they were entitled to the usual judgment of sale. The order of affirmance of the Appellate Division states that the court had "unanimously decided that the findings of fact are supported by the evidence."

*Abram I. Elkus* and *Edward C. James* for appellant. The contract for plumbing was illegal and no recovery can be had thereon. (L. 1892, ch. 602 ; *Leavitt* v. *Palmer*, 3 N. Y. 19 ; *Bloom* v. *Saberski*, 8 Misc. Rep. 311 ; *Ferdon* v. *Cun-*

*ningham,* 20 How. Pr. 154; *Lanzer* v. *Unterberg,* 9 Misc. Rep. 210; *Hay* v. *Bishop,* 3 Daly, 109; Broom's Legal.Maxims [2d ed.], 576; *Johnston* v. *Dahlgren,* 31 App. Div. 204; *People ex rel.* v. *Warden, etc.,* 144 N. Y. 529.) This was an entire contract. (*Ming* v. *Corbin,* 142 N. Y. 334; *Manda* v. *Sullivan County Club,* 16 Misc. Rep. 366; *Pearse* v. *Divver,* 23 Misc. Rep. 691.) The mason work, architect's services, gas logs and globes, forming part of the plumbing contract, are tainted with the same illegality, and no recovery can be had on them. (*Rose* v. *Truax,* 21 Barb. 361; *Saratoga Co. Bank* v. *King,* 44 N. Y. 87; *McGuire* v. *Corwin,* 101 U. S. 108; *Brown* v. *Brown,* 34 Barb. 533; *Barton & Woodworth* v. *P. J. & U. F. P. Road Co.,* 17 Barb. 397; *Decker* v. *Morton,* 1 Redf. 477; *Hyslop* v. *Clarke,* 14 Johns. 458; *Friedman* v. *Bierman,* 43 Hun, 387; *Parks* v. *J. D. Packing Co.,* 6 Misc. Rep. 570.) The $2,000 paid by the defendant should have been applied to claims other than that for plumbing. (*Field* v. *Howland,* 6 Cranch, 8; 1 Am. Lead. Cas. 294; *Allen* v. *Culver,* 3 Den. 284; *L. Ins. Co.* v. *C. V. R. R. Co.,* 19 App. Div. 509; *Allen* v. *Allen,* 18 Wkly. Dig. 184; 101 N. Y. 658; *Simpson* v. *Ingham,* 2 B. & C. 65; *Huffstater* v. *Hayes,* 64 Barb. 573; *U. S.* v. *Kirkpatrick,* 9 Wheat. 720; *Backhouse* v. *Patton,* 5 Pet. 160; *Griswold* v. *O. C. Sav. Bank,* 93 N. Y. 301.)

*George C. Lay* and *Thomas P. Wickes* for respondents. As the affirmance by the Appellate Division was unanimous, and the decision was that the findings of fact are supported by the evidence, this court has no power under the Constitution and section 191 of the Code of Civil Procedure to ascertain and determine whether there is any or sufficient evidence to sustain the report of the referee on the facts. (*Szuchy* v. *H. C. & I. Co.,* 150 N. Y. 219; *Ayres* v. *D., L. & W. R. R. Co.,* 158 N. Y. 254; *Reed* v. *McCord,* 160 N. Y. 330; *Lewis* v. *L. I. R. R. Co.,* 162 N. Y. 52; *Kleiner* v. *T. A. R. R. Co.,* 162 N. Y. 193; *Ming* v. *Corbin,* 142 N. Y. 340; *Adams* v. *R. L. Co.,* 159 N. Y. 176; *Trustees Amherst Col-*

*lege* v. *Ritch*, 151 N. Y. 282; *People ex rel.* v. *Barker*, 152 N. Y. 417.)

GRAY, J. The unanimous affirmance of the judgment recovered by the plaintiffs deprives this court of jurisdiction to review the questions of fact in the case. We are required to presume that the evidence supports the facts upon which the referee based his decision. It is evident that the referee considered that he was making the " concise " or " short decision," as it is now commonly called, permitted by sec. 1022 of the Code and I think it should be regarded as such, in view of the characterization given to it by himself. But it is not, in my opinion, very material how the form of the report is regarded. Although if in the general, or " short," form, it would be allowed the effect of a verdict, with all the presumptions in its support, in its present form, the decision is quite full enough for the purpose of supporting the judgment and there were no other findings requested. I entertain no doubt, but that whatever questions of fact are involved in the decision below, they are conclusively settled and beyond our review.

The first question of law which is presented is as to the effect of the plaintiffs' failure to comply with the provisions of chapter 602 of the Laws of 1892; which, in section six, after the requirements as to registration, state that " after the first day of March, 1893, it shall not be lawful for any person to engage in, or carry on the trade, business or calling of an employing or master plumber in any of the cities of this state unless his name and address shall have been registered as above provided." I think there can be no doubt but that the effect of the violation of the statute was to preclude them from enforcing a recovery upon their contracts, while in default. If it was made unlawful for them to carry on their business, without having previously registered their names and addresses with the board of health, they certainly were disabled from compelling payment for work performed by them in violation of the statute.

In the next place, it is argued for the appellant that this

was an entire contract between the plaintiffs and the defend-
ant and that, being tainted by the illegality referred to above,
no recovery could be had by the plaintiffs with respect to the
items of work other than their own work, and which they had,
under the defendant's instructions, employed other mechanics
to perform and for which they had paid.  The plaintiffs'
employment by the defendant was oral and whether, with
respect to all the kinds of work, which was required to be
done in the defendant's house, the contract with the plaintiffs
was entire in its nature, or whether, with respect to work other
than plumbing and to be done by other mechanics, it was
severable, was a question of fact to be determined upon the
evidence.  It depended upon the intention of the parties and,
the contract not being in writing, that was to be discovered
by a consideration of their agreements and of their acts, and
of all the circumstances under which the plaintiffs were
employed by defendant.  (2 Parsons on Contracts, 517 ;
*Ming* v. *Corbin*, 142 N. Y. 334.)

The referee's decision is that the plaintiffs were employed
as master plumbers to do some plumbing work and that it was
only after that work had been proceeded with, that " other
work, mason work, carpenter work and painting work, etc.,
was found to be necessary," which the defendant instructed
the plaintiffs to have done.  From his decision, it appears that
the work to be done in defendant's house consisted of separate
jobs, calling for different mechanical employments, and while
it was possible that the whole work might have been con-
tracted for under an entire contract, the referee has not so
found and his decision negatives, and precludes, the idea of a
contract of that nature having been made.  While the plain-
tiffs were unable to recover for whatever remained unpaid
upon their own plumbing work, they were not precluded from
recovering for items paid by them for the work done for
defendant by other mechanics, whom they had called in.  The
question then is presented, whether the payment by the
defendant of the sum of $2,000, upon the completion of the
work, to the plaintiffs was illegally applied upon their plumb-

ing bill. The appellant contends that it should have been applied upon the other items. This, also, was a question of fact to be determined upon the evidence, whether the sum of $2,000, was voluntarily paid by the defendant upon the plumbing bill, or not. It was quite competent for him to do so; notwithstanding the unenforceable nature of the obligation, from the violation of the statute.

The plaintiffs had performed their work and the defendant had had the benefit of it. If the latter chose to pay for it, the payment could not be revoked. He might have contested the demand for payment of the plumbing work by reason of the illegality of the contract for its performance; but he did not do so and, therefore, the court will leave the parties as they are. (*Burt* v. *Place*, 6 Cowen, 431; *Knowlton* v. *Congress & Empire Spring Co.*, 57 N. Y. 518.) The decision was that when, on February 19, 1895, the defendant paid to the plaintiffs $2,000, upon the bill they then presented to him and, at the same time, refused to approve for payment the items of the bill rendered "*for work other than plumbing work*," there was on the former's part a voluntary payment of money to the plaintiffs for application by them upon their own items of work. In my opinion, the language of the decision is incapable of any other meaning and the referee's conclusion, that the plaintiffs were free to apply this $2,000 on account of their plumbing bill, was perfectly correct.

I do not consider that there are any other serious questions, which demand consideration from us, and, therefore, I advise that the judgment be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, LANDON, CULLEN and WERNER, JJ., concur.

Judgment affirmed.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
DELLA HARTWELL, Appellant.

1. RECEIVING STOLEN PROPERTY — INDICTMENT.　An indictment, under
section 550 of the Penal Code, naming the crime as "knowingly receiv-
ing" stolen property, charging the defendant with having "committed
the crime aforesaid by wrongfully, unlawfully and feloniously receiving
stolen property, consisting of articles of personal property, to wit,'
describing the property, and then charging the commission of the crime
by concealing, withholding and aiding in the concealing and withholding
of the property, "knowing at the time that the same had been stolen, as
aforesaid," is defective, because, *first*, there is no such crime as "know-
ingly receiving;" *second*, the two ways of committing the crime should
not have been charged in one, but in separate counts; but whether or not
a demurrer will lie, under subdivision 3 of section 323 of the Code of Crim-
inal Procedure, to remedy these defects, is undecided.

2. WHEN DEMURRABLE.　The indictment is demurrable, however, under
subdivision 4 of that section, because as to the first manner of committing
the crime it fails to charge the defendant with knowing, at the time of the
receiving of the property, that the same was stolen, and the word "felo-
niously" cannot be held to indicate such knowledge; and as to the second
manner of committing the crime it fails to allege that the defendant
received any money, etc., for concealing, etc., as provided in the statute;
it omits, therefore, to allege essential elements constituting the crime, which
omissions tend to prejudice the substantial rights of the defendant upon
the merits, and in such a case, a decision overruling a demurrer to the
indictment is reversible error.

*People* v. *Hartwell*, 55 App. Div. 234, reversed.

(Argued February 18, 1901; decided March 23, 1901.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered
November 28, 1900, affirming a judgment of the Chenango
County Court convicting the defendant of the crime of crim-
inally receiving stolen property, knowing it to have been stolen,
and an order overruling a demurrer to the indictment.

The indictment is as follows :

" The grand jury of the county of Chenango, in the state of
New York, by this indictment accuses William M. Campbell,
Wellington Barber, Della Hartwell and Louisa Marvin, of the

crime of 'knowingly receiving' stolen property, committed as follows, to wit:

"That the said William M. Campbell, Wellington Barber, Della Hartwell and Louisa Marvin, on or about the 5th day of January, 1899, at the town of Smyrna, in the county of Chenango and state of New York, committed the crime aforesaid, by wrongfully, unlawfully and feloniously receiving stolen property, consisting of articles of personal property, to wit:

"Teaspoons, bedding, horse blankets, ladies' clothing, dishes, lamps, curtains, portiers, a new one-horse harness, a Newmarket wrap, and many other and various articles of personal property to the grand jury aforesaid at this time unknown, and which said property belonged to and was the property of John E. Smith, G. Wells Smith, Mrs. Abbie Lewis, Horace J. Newell, and of other persons the names of whom are at this time to the grand jury aforesaid unknown, and which said articles of personal property had been wrongfully, unlawfully and feloniously appropriated in such a manner as to constitute larceny from the above-named John E. Smith, G. Wells Smith, Mrs. Abbie Lewis, Horace J. Newell and other persons, to the grand jury aforesaid at this time unknown, by such property having been taken from the possession of said above-named persons, they being the true owners thereof, with the wrongful, unlawful and felonious intent of depriving such true owners of their said property as described aforesaid, and which was so taken and appropriated by one Frank Hartwell and other persons whose names are at this time to the grand jury aforesaid unknown, and which said wrongful act or acts of so taking and appropriating said property was committed in the county of Chenango and Madison and state of New York, and after having been so taken and stolen as aforesaid, the above-named William M. Campbell, Wellington Barber, Della Hartwell and Louisa Marvin, in the said town of Smyrna, in the county of Chenango, N. Y., knowing the same property to have been stolen, concealed, withheld, and aided in concealing and withholding, such property, well knowing at the

time that same had been stolen as aforesaid, and so wrongfully appropriated same in such manner as to constitute larceny, with such wrongful, unlawful and criminal intent received and aided in concealing and withholding such property at the place occupied by said Frank Hartwell, in the said town of Smyrna, on the 5th day of January, 1899, and at other places in said county of Chenango, N. Y., to the grand jury aforesaid at this time unknown.

"All of which was done contrary to the provisions of the statutes of the state of New York, in such case made and provided."

*Herbert C. Stratton* and *V. D. Stratton* for appellant. The indictment contains only one count and is radically defective, in that it charges upon its face the commission of more than one crime. (*People* v. *Tower*, 135 N. Y. 459 ; *People* v. *Sebring*, 14 Misc. Rep. 31 ; *People* v. *Stock*, 21 Misc. Rep. 147 ; *People* v. *O'Donnell*, 46 Hun, 358 ; *People* v. *Klipfel*, 160 N. Y. 374 ; *People* v. *Upton*, 38 Hun, 107 ; *People* v. *Rose*, 39 N. Y. S. R. 292 ; *People* v. *Dumar*, 106 N. Y. 502 ; *People* v. *Kerns*, 7 App. Div. 535 ; *People* v. *Harmon*, 49 Hun, 558 ; 112 N. Y. 666.) There is no allegation in this indictment that the defendant "received stolen property, knowing the same to have been stolen," and hence the indictment does not charge the commission of any offense. (2 Arch. Cr. Pr. [7th ed.] 667.) There was no crime charged in the indictment. The defendant was charged with "Knowingly receiving" stolen property. There is no such offense or crime known to the law. (*Miller* v. *People*, 25 Hun, 473 ; *People* v. *Johnson*, 1 Park. 564 ; *Chatterton* v. *People*, 15 Abb. 147.)

*Wordsworth B. Matterson* for respondent. The indictment is not defective, and the demurrer was properly overruled. (*People* v. *Weldon*, 111 N. Y. 569 ; Penal Code, § 550 ; Code Crim. Pro. § 285 ; *People* v. *Sullivan*, 4 N. Y. Cr. Rep. 194 ; *People* v. *Peck*, 2 N. Y. Cr. Rep. 317.) The allegation in this indictment charges the defendant with guilty knowledge in express terms and by implication. The

name of the crime is a mere matter of form, and if not stated, or if stated incorrectly, it does not vitiate the indictment. (*People* v. *Sullivan*, 4 N. Y. Cr. Rep. 193.)

HAIGHT, J.  A demurrer to the indictment was interposed by the defendant upon the ground, among others, that the facts stated did not constitute a crime.  The demurrer was overruled, and the questions raised thereby are now brought up for review.

The provisions of section 550 of the Penal Code, so far as they are material to be now considered, are as follows: " A person, who buys or receives any stolen property, * * * knowing the same to have been stolen * * * or who corruptly, for any money, property, reward, or promise or agreement' for the same, conceals, withholds, or aids in concealing or withholding, any property, knowing the same to have been stolen, * * * is guilty of criminally receiving such property, and is punishable, by imprisonment," etc.  It will be observed that the provision defines one crime, but committed by different means:  *First*. By the feloniously buying or receiving  stolen property knowing it to have been stolen; and, *second*, by the feloniously concealing, withholding or aiding in the concealing or withholding of such property knowing it to have been stolen. Under the first provision the crime consists of three elements: 1. The property must be stolen.  2. It must be received by the accused with the knowledge that it was stolen at the time of the receiving.  3. It must be received by him with the felonious intent of depriving the true owner of the property. A person may receive stolen property knowing it to be stolen, for the purpose of returning it to the true owner, and not be guilty of any crime.  It is only where the property is received, knowing it to have been stolen, with the criminal intent to deprive the owner of the property that the receiver is punishable.

Under the second provision the elements constituting the crime differ in one respect.  The property must be secreted or

withheld under a promise for pay or reward. The pleader in the indictment evidently undertook to charge the crime by both means in one count. He starts in by naming the crime as "knowingly receiving" stolen property. He then charges the defendant with having "committed the crime aforesaid by wrongfully, unlawfully and feloniously receiving stolen property consisting of articles of personal property, to wit.". He then describes the property. It will be observed that the "crime aforesaid" refers to the crime as named by him above as that of "knowingly receiving," and further that he has omitted from the charge that the property was known by the defendant to have been stolen at the time she received it. He then proceeds to charge the defendant with having committed the crime under the second provision of the statute by concealing, withholding and aiding in the concealing and withholding of the property "knowing at the time that the same had been stolen as aforesaid," but omits to charge that the concealing was done corruptly for money, property, reward, promise or agreement for such money, property or reward. There are several defects in this indictment. In the first place, there is no such crime as that named in the indictment of "knowingly receiving." We are aware that in some editions of the Penal Code the words "Knowingly receiving" appear at the beginning of section 550, but they are catch words merely inserted by the editor or publisher and form no part of the statute. A person may know that he receives property and yet not know that the property was stolen. Again, under this provision of the Code, as we have seen, the crime may be committed in two different ways: *First*, by criminally receiving property knowing it to have been stolen; *second*, by the secreting of such property knowing it to have been stolen, for money, property or reward. As we have seen, the allegations of this indictment are contained in one count. The provisions of section 278 of the Code of Criminal Procedure provide that the indictment must charge but one crime *and in one form*, except as in the next section provided. That section provides that "the crime may be charged in sepa-

rate counts to have been committed *in a different manner* or by different means." It would have been entirely proper to charge this crime in one count as having been committed under the first provision of the statute, and in a second count under the second provision, but uniting the two in one count is unauthorized. (*People* v. *Dumar*, 106 N. Y. 502.) It may be that demurrer will not lie to remedy these defects. Under subdivision three of section 323 of the Code of Criminal Procedure a demurrer may be interposed when "more than one crime is charged in the indictment within the meaning of sections 278 or 279." It may be that, under the provisions of this section, one crime stated by different means in the same count is not demurrable although prohibited by these sections. We, therefore, without determining this question, proceed to consider the provisions of subdivision four of that section which provides that the defendant may demur if the facts stated do not constitute a crime.

In order to constitute the crime defined by the statute by the means first specified the defendant must be charged with knowing at the time of the receiving of the property, that the same was stolen. The knowing that the property was stolen is one of the essential and main elements constituting the crime and without it no crime is charged. It is claimed that the word "feloniously" appearing in the charge indicates that the receiving of the property was with the knowledge that it was stolen, but this does not necessarily follow. A person may receive property from another and at the time of the receiving of it may intend to retain it and thus feloniously deprive the owner thereof and still have no knowledge that the property had been stolen. By so retaining the property he may become guilty of larceny, either grand or petit, but he would not be guilty of the crime charged by the provisions of the Code under consideration. Felonious, as ordinarily used, means a criminal intent, an intent to commit a crime, but in no case to which our attention has been called has it ever been held to indicate the knowledge of a fact, such as that the property had been stolen. When we come to con-

sider the charge by means of secreting or withholding, under the statute, we find that it is then charged that the defendant secreting or withholding at that time knew that the property had been stolen, but this charge does not support the first allegation in the indictment; for, under that, it is necessary that the property should be known to have been stolen at the time of receiving and not at some subsequent time when the defendant aided or assisted in concealing the property.

Under the charge for concealing, as we have seen, there is no allegation that the defendant received any money, property, reward or promise of any such money, property or reward for concealing, withholding, etc., as provided in the statute. Here, again, we have the omission of an essential element constituting the crime under this provision of the Code, and we do not understand it to be claimed that the charge contains other words of like import and meaning by which this omission is cured.

We have been liberal, heretofore, in construing indictments, and have sustained them when the crime was charged with sufficient certainty, so as to enable the court to pronounce judgment. We have sustained them when they have been defective with reference to matters of form which did not tend to prejudice the substantial rights of the defendant upon the merits; but this pleading fails to allege essential matters constituting the crime, and we think the demurrer should have been sustained.

The judgment of conviction should be reversed and the defendant discharged.

PARKER, Ch. J., GRAY, O'BRIEN, LANDON, CULLEN and WERNER, JJ., concur.

Judgment accordingly.

MAX KALISH, Appellant, v. JULIUS KALISH et al., as Executors of JOSEPH KALISH, Deceased, et al., Respondents.

1. WILL — WHEN EQUITY HAS JURISDICTION OF ACTION FOR CONSTRUCTION. Equity has jurisdiction of an action to determine the validity of a will when the construction of a trust is involved and there is an intervening life estate under which the life tenant is in possession.

2. WHEN INTESTACY MAY BE AVOIDED. When invalid provisions of a will may be eliminated so as to leave intact the parts that are valid and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be.

3. PERPETUITIES — UNLAWFUL ACCUMULATION OF RENTS AND INCOME. A testamentary direction that upon the death of a life tenant the executors hold the property in trust with the power to collect the rents, issues and profits, and after the payment of taxes, charges and specified annuities invest the surplus in real estate, and that the estate shall not be settled for a period of five years after the death of the life tenant, final settlement to be made as soon thereafter as in the opinion of the executors will be for its best interests, is void as contravening the statutes against perpetuities, since the indefinite period named for the continuance of the trust may exceed two lives in being; and is also void as violating the statute against unlawful accumulations of rents and income where the beneficiaries are of full age.

4. WHEN VOID INTERMEDIATE TRUST MAY BE EXPUNGED WITHOUT TOTAL DESTRUCTION OF WILL. In a will which gives the testator's widow a valid life estate, a subsequent clause providing for the void trust may be expunged without destroying the will as a whole, or creating partial intestacy, when it is succeeded by a valid ultimate trust and good remainders in favor of the same legatees for whose benefit the void intermediate trust was created and under which they will take in the same proportions.

*Kalish* v. *Kalish*, 45 App. Div. 528, affirmed.

(Argued February 5, 1901; decided March 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 22, 1899, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

This action was brought to test the validity of certain pro-

visions of the last will and testament of Joseph Kalish, deceased, and to have certain trusts therein created declared void.

*George H. Starr* for appellant.   Jurisdiction to determine the validity of a trust as to real property contained in a will at the instance of the heir even when claiming in hostility to the trust, is expressly conferred by section 1866 of the Code of Civil Procedure.  (*Simmons* v. *Burrell,* 8 Misc. Rep. 388; *Whitney* v. *Whitney,* 63 Hun, 61; *Adams* v. *Becker,* 47 Hun, 65; *Drake* v. *Drake,* 41 Hun, 366; *Heinje* v. *Menien,* 20 N. Y. Supp. 614; *Read* v. *Williams,* 125 N. Y. 560; *People* v. *England,* 91 Hun, 152; *People* v. *U. Ins. Co.,* 15 Johns. 358; *Jackson* v. *Chapman,* 3 Cow. 389; *Dresser* v. *Brooks,* 3 Barb. 429.)  Equity has jurisdiction, apart from any authority conferred by section 1866, on the ground that there is no full, adequate and immediate remedy at law.  (*Mellen* v. *Mellen,* 139 N. Y. 210; *Read* v. *Williams,* 125 N. Y. 560; *Shaver* v. *M'Graw,* 12 Wend. 558; *Trull* v. *Granger,* 8 N. Y. 115; *Brady* v. *McCosker,* 1 N. Y. 214; *Wright* v. *Miller,* 8 N. Y. 9; *Wallace* v. *Payne,* 14 App. Div. 597; *Heinje* v. *Menien,* 20 N. Y. Supp. 622.)  The directions for the accumulation of the rents, issues and profits, and of the income are invalid. (1 R. S. 773, § 3; 726, §§ 37, 38; *Harris* v. *Clark,* 7 N. Y. 242.)  The gifts of the residue intended by items " ninth " " tenth " and " eleventh " of the will did not and could not vest at the time of testator's death consistently with other provisions of the will.  (*Amory* v. *Lord,* 9 N. Y. 403; *Fargo* v. *Squiers,* 154 N. Y. 250; *Henderson* v. *Henderson,* 113 N. Y. 1; *Child* v. *Russell,* 11 Metc. 115; *Hobson* v. *Hale,* 95 N. Y. 588.)  The remainder, or residuary gifts, being too remote, and being limited upon the termination of an active trust which in several respects violates the statutes, are utterly void.  They fail with the trust, and cannot be accelerated and held valid and deemed to vest at the death of the widow, as that would be contrary to the manifest intention of the testator.  (*Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 112; *Schettler* v. *Smith,* 41 N. Y. 328; *Levy* v.

*Levy*, 33 N. Y. 97; *Knox* v. *Jones*, 47 N. Y. 389; *Amory* v. *Lord*, 9 N. Y. 403; *Harris* v. *Clark*, 7 N. Y. 242.)

*Edward W. S. Johnston* and *Edward H. Kelly* for respondents. This action cannot be maintained. (*Jones* v. *Richards*, 24 Misc. Rep. 627; *Hovey* v. *Purdy*, 10 N. Y. S. R. 40; *Weed* v. *Weed*, 94 N. Y. 243; *Baldwin* v. *Palen*, 24 Misc. Rep. 170; *Chipman* v. *Montgomery*, 63 N. Y. 221; *Stiude* v. *Ridgway*, 55 How. Pr. 301; *Duncan* v. *Duncan*, 4 Abb. [N. C.] 275; *Sutherland* v. *Ronald*, 11 Hun, 238; *Mellen* v. *Banning*, 60 Hun, 151; *Anderson* v. *Anderson*, 112 N. Y. 106.) There is nothing illegal in the provisions of this will that the executors should not make distribution of the estate until after the expiration of five years from the date of the death of the testator's widow. (*Chanler* v. *N. Y. R. R. Co.*, 54 N. Y. Supp. 341; *Steinway* v. *Steinway*, 163 N. Y. 197; *Greene* v. *Greene*, 125 N. Y. 506; *Robert* v. *Corning*, 89 N. Y. 235; *Matter of Farrer*, 17 N. Y. S. R. 776; *Montignani* v. *Blade*, 74 Hun, 297; 145 N. Y. 111; *Murray* v. *Murray*, 7 N. Y. S. R. 391; *Van Brunt* v. *Van Brunt*, 14 N. Y. S. R. 887; 111 N. Y. 178; *Henderson* v. *Henderson*, 113 N. Y. 1.) The provision for the executors holding the estate in trust during this period of five years is clearly severable from the rest of the provisions of the will. (*Pray* v. *Hegeman*, 92 N. Y. 508; *Delafield* v. *White*, 19 Abb. [N. C.] 104; *Steinhardt* v. *Cunningham*, 130 N. Y. 292; *Goebel* v. *Wolf*, 113 N. Y. 405; *Murray* v. *Murray*, 7 N. Y. S. R. 391; *Carr* v. *Smith*, 25 App. Div. 214; *Durfee* v. *Pomeroy*, 154 N. Y. 583; *Matter of Tompkins*, 154 N. Y. 634; *Barbour* v. *De Forest*, 61 How. Pr. 181; *Kennedy* v. *Hoy*, 105 N. Y. 134.)

Werner, J. The plaintiff asserts the invalidity of all the provisions of the will herein, except those which relate to the widow's life estate and to the process of administration. The defendants primarily defend the will as a whole, and secondarily upon the theory that if any of its provisions are void these can be eliminated without destroying the testamentary

scheme or creating partial intestacy. The complaint was dis-
missed at Special Term, and this ruling was affirmed by the
Appellate Division upon the ground that plaintiff's claim
presents a purely legal question, which has no place in a court
of equity. While concurring in the result reached by the
learned Appellate Division, we do so upon other grounds
than those stated in its opinion. We think that under the
cases of *Brady* v. *McCosker* (1 N. Y. 214), referred to
with approval in *Anderson* v. *Anderson* (112 N. Y. 108),
and *Read* v. *Williams* (125 N. Y. 560), the complaint
herein states facts which justify equitable interference. The
existence of an intervening life estate, under which the life
tenant is in possession, and of a trust which requires construc-
tion, present such an impediment to the maintenance of an
action at law as to give jurisdiction to a court of equity.
Although we are constrained to differ from the Appellate
Division upon the question which was made the basis of its
decision, we think there are other obstacles to the plaintiff's
recovery which cannot be removed and which would render
fruitless another trial and appeal. We, therefore, deem it
our duty to end this litigation by deciding the controlling and
unchangeable questions involved. The testator, Julius Kal-
ish, died in October, 1897, leaving a will which was dated
March 2nd, 1895, and admitted to probate January 11th,
1898. His widow and nine children, of whom the plaintiff is
one, survive him. Under this will the widow receives all the
testator's property, both real and personal, during her life.
After her death, and until the final distribution of the estate,
the daughters Annie and Bertha were each to receive an
annuity of $700.00, and the daughter Fannie an annuity of
$400.00. The executors are given a power of sale of the real
estate during the lifetime of the widow, with the widow's
consent, as well as an absolute power of sale during the period
between her death and the final settlement of the estate. In
the event of a sale of any of the real estate the executors are
directed to re-invest the proceeds in other real estate. Upon
the widow's death the executors are directed to hold the prop-

erty in trust until the final distribution of the estate, with power to collect the rents, issues and profits, and after payment of the annuities above mentioned, taxes and charges, to invest the surplus in real estate. The eighth clause of the will contains a direction that the estate shall not be distributed or settled for a period of five years after the widow's death, such final settlement and distribution to be made as soon after that event as in the opinion of the executors will be for the best interests of the estate and those who are to be sharers therein. This clause also contains a general power of sale in aid of such final settlement. Upon the final distribution of the estate the plaintiff is to receive $100.00 in cash; the executors are to take $8,000.00 in trust for the daughter Fannie, who is to have the income thereof during her life, and after her death the principal of this fund is to go to her surviving child or children, and in case of her death leaving no surviving child or children, the principal of such fund is to be. divided among the testator's children in the proportion of four-thirteenths to each of his daughters Annie and Bertha, and one-thirteenth to each of his sons, . Julius, Brono, William, Richard and George, to be paid as soon as convenient after the death of the daughter Fannie. The eleventh clause directs that after the payment of said legacy to the plaintiff, and after deducting such trust fund for the daughter Fannie, the balance of the estate is to go to the testator's daughters Annie and Bertha, and his sons, Julius, Brono, William, Richard and George, in the following proportions: To Annie and Bertha, four-thirteenths each; to Julius, Brono,. William, Richard and George, one-thirteenth each. It is conceded by all concerned that the will gives the widow a valid life estate. It cannot be doubted that the intermediate trust provided for in the seventh and eighth clauses is invalid because it is in contravention of the statutes against perpetuities and unlawful accumulations of rents and income. (Secs. 32 and 50, Real Property Law, and secs. 2 and 4, Personal Property Law.) The trust as to both realty and personalty is to continue for a definite

period of five years after the widow's death, and for such indefinite period thereafter as the trustees may deem necessary. This may be for a longer period than two lives in being, and is, therefore, void. The direction as to accumulation of rents and income is not limited to the minority of any beneficiary, and, as the beneficiaries are all of full age, is also void. We now come to what may be called the third division of this will which embraces the ultimate trust and the remainders. These provisions, standing by themselves, are clearly valid. At this point the question arises whether they are so independent of and separable from the void intermediate trust that the latter may be eliminated from the will and the two valid parts joined together without destroying or changing, in its essential features, the general testamentary scheme embodied in the instrument. What were the prominent features of this scheme? *First.* A life estate in the widow with power of sale in the executors with the widow's consent. *Second.* A trust for five years with an absolute power of sale in the executors, during which period the three daughters were to have the annuites above mentioned and two of them together with their brother Richard were to have the use of certain real estate, while the executors were to hold and manage the property and accumulate and reinvest the surplus. *Third.* A trust for the daughter Fannie during her life, with remainder over after her death; a specific legacy to the plaintiff and remainders of the residue of the testator's estate to his other children. Let us now stop to inquire what will happen if the void trust is lifted out of the will and the first and third sections of the will are held valid. The only part of the testamentary scheme that will fail is that which attempts to defer the time of distribution for five years during which Annie and Bertha are to have their annuities and the use of the homestead or a substitute therefor; and during which the daughter Fannie is to have her annuity. It happens that the annuity to the latter is the exact equivalent of interest at five per cent upon the fund provided for in the ultimate trust in her favor so that she would lose nothing by the change. In the absence of knowl-

edge as to the extent of the testator's estate it is not unfair to assume that the annuities to the other daughters fairly repre-sent the returns which they may expect to receive from their respective shares after distribution. In that event they would sustain no loss except that occasioned by being deprived of the use of the homestead or some other place instead of it. In all other respects the will stands as the testator made it, and the main features of his testamentary plan will be carried out. What will be the result if we decide that the ultimate trust and the remainders are so far dependent upon the void inter-mediate trust that the former cannot take effect until the expiration of the period during which the latter was to run? It would follow, as a logical sequence, that the testator died intestate at least as to the five-year period fixed for the con-tinuance of the void trust, and possibly as to all of his prop-erty, except the widow's life estate. The latter contingency would entail the utter destruction of the testator's plan. The former would create a condition even worse than that. In case of complete intestacy, after the expiration of the widow's life estate, all the heirs at law of the testator would at least be upon an equal footing, and would know just what to expect. But with a valid life estate, followed by intestacy for a term of five years, which in turn is succeeded by an unassailable trust and valid testamentary remainders, who could fore-tell the end as between the disinherited and hostile plaintiff and the heirs at law who, as legatees, are to take the sub-stance of the estate? The question carries its own answer and clearly presents a situation that is possible in theory, but utterly impracticable for any purpose, except to waste this estate in litigation. Having demonstrated, as we think, that it is not only for the interests of all concerned in the estate, except the plaintiff, but also in direct further-ance of the testator's plan, to uphold this will by simply eliminating the void intermediate trust and its necessary incidents, we have now to inquire whether there is any legal obstacle to such a course. It is axiomatic that courts cannot make new wills for testators who have failed to make valid

wills for themselves. While recognizing the force of this truth courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established in this state, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be. This case seems to present a fair opportunity for the application of the latter rule. Here we are not required to make a new will for the testator. We have a valid life estate, followed by a void intermediate trust for five years succeeded by a valid ultimate trust and good remainders. The void intermediate trust is for the benefit of the same legatees who take under the ultimate trust and remainders respectively. The excision of the void trust simply gives immediate effect to those ulterior devises which under it were to be postponed for five years. The same persons take in the same proportions as before. By way of recapitulation we, therefore, conclude that equity and the decided cases concur in requiring us to hold that the invalid parts of this will can be expunged without destroying the will as a whole, or creating even partial intestacy. The life estate with the power of sale during its existence, subject to the widow's consent, can stand. The succeeding trust and its accompanying power of sale, with its incidental directions regarding the occupation of the homestead, or its substitute, are declared void. The ultimate trust and the remainders are held valid to take effect at the conclusion of the life estate. That this disposition of the case is within the rule long followed by this court is attested by the following decisions: In *Haxtun* v. *Corse* (2 Barb. Ch. 507) it was held that where a power in trust, to executors, to lease the real estate of the testator until it could be sold, would

have the effect to suspend the absolute power of alienation in such real estate, and was, therefore, void, the power in trust to sell, created by the same will, was nevertheless valid. So in *Van Vechten* v. *Van Veghten* (8 Paige, 105) the chancellor, in discussing the provisions of a complicated will, said : " Where personal estate is vested in trustees upon various trusts, some of which are valid and others void, the courts must sustain those which are legal and valid if they can be separated from those which are illegal and void." In *Harrison* v. *Harrison* (36 N. Y. 543) the court in taking out of the will certain ulterior limitations, which were declared to be void, held that no difficulty was presented by the fact that all the limitations, the good as well as the bad, were embraced in a single trust. In passing upon that question the court said : " The principle is now well established that the courts lean in favor of the preservation of all such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator." Referring to the particular trust there under consideration the court continued : " It is no objection to the application of this rule to the case at bar that the limitations, as well those which are good as the one alleged to be bad, are embraced in a single trust. A single trust created for two purposes, one lawful and the other unlawful, is good for the lawful one, although void for the unlawful one." In *Tiers* v. *Tiers* (98 N. Y. 568) it was held that a void ulterior contingent limitation did not disturb a primary disposition in trust nor affect other separate parts of the will. In *Henderson* v. *Henderson* (113 N. Y. 1) the will contained a direction to the executor to make partition as soon after the testator's death as practicable, but reserving to the executor discretion to delay such partition for a period of five years after such death. It was there held that a provision restricting the limitation over to such of the issue of a deceased child " as shall be living at the time of such partition " was void; but as it was inconsistent with the earlier provisions of the same clause, and unnecessary so far as the perfecting of a testa-

mentary scheme for disposing of the residuary estate was con-
cerned, it should not be allowed to prevail over the preceding
direction.    The court there said : " Courts should endeavor,
by every reasonable intendment, and by a liberal construction,
to sustain a testamentary disposition of property when, in so
doing, they can give actual and just effect to the testator's
intent and validate at least the main, if not the true, part
of a testamentary scheme which contemplates distinct and
severable acts."    Analogous to the foregoing cases are *Robin-
son* v. *Robinson* (5 Lans. 168), where it was held that " Wills
may be void in part for some illegality or violation of law, and
valid as to the residue," and *Hotaling* v. *Terpenning* (25
Hun, 485), where a legacy of $400.00, given after one year
and one day from the decease of the testator to his daughter,
was to be paid to her when she became of age, or at her
marriage if she married sooner, and meantime it was to
accumulate.    The court there said : " There was no trust,
because she was married before the probate of the will, proba-
bly before the testator's death, and certainly before the one
year and one day after his decease provided for in the will,
and, therefore, she was entitled to receive the legacy at once
without any waiting for accumulations."    So in *Kennedy* v.
*Hoy* (105 N. Y. 135), where a question arose as to the valid-
ity of certain trusts, this court said : " Where several trusts
are created by a will which are independent of each other,
and each complete in itself, some of which are legal and others
illegal, and the legal can be separated from the illegal and
upheld without doing injustice or defeating what the testator
might in the emergency be presumed to wish, the illegal trusts
may be cut off and the legal permitted to stand."    In *Weeks*
v. *Cornwell* (104 N. Y. 336) a litigation arose over the pro-
visions of a long will in which the testator's intention was
obscured by much inappropriate and useless verbiage.    There
was a devise for life to the testator's widow, an invalid trust
to mortgage the same lands and a remainder over on the ter-
mination of the trust.    It was held that the devise took effect
at testator's death as a vested remainder, subject to the

48

life estate in the widow. While the facts in the case last cited differentiate it from the one at bar, it furnishes an interesting illustration of the extent to which courts have gone to prevent intestacy where a will has been made. In emphasizing this rule the learned writer of the opinion in that case quotes from Jarman on Wills (Vol. 1, p. 643), as follows: "In the construction of wills the most unbounded indulgence has been shown to the ignorance, unskillfulness and negligence of testators. No degree of technical informality or grammatical or orthographical error, nor the most perplexing confusion in the collection of words, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will and the whole carefully weighed together." In other jurisdictions the same principle has been followed. In *Macknet* v. *Macknet* (24 N. J. Eq. 277) the testator gave to his wife, as part of the provision made for her in lieu of dower, the use of a house and lot, or the rents thereof, and also the income of certain stocks and bonds during her life, or until marriage, and after her death or marriage to an infant daughter. Held, "That no disposition whatever of such interest of the widow in his estate having been made by the testator, in the event of her refusal to accept the provision in lieu of dower, the devise and bequest vested in the daughter in possession immediately upon the testator's death." In *Adams* v. *Gillespie* (2 Jones Eq. [N. C.] 244) the testator gave to his wife certain personal property for life, then to his daughter for life, and then to the daughter's surviving children. It was there held that the wife's dissent from the will removed the interposed life estate, and that the daughter took the property immediately. In *Yeaton* v. *Roberts* (28 N. H. 459) it was held, "That if the person to whom the property is given for life decline to accept it, it vests in possession in those to whom it was limited in remainder, and the heirs of the testator have no right to the possession during the life of the first devisee." There are

many English cases in which the subject of "accelerated remainders" is discussed. But we cannot review them all within the space which can properly be given to this opinion. Jarman, in his work on Wills (Vol. 1, p. 568), says, that the earlier cases are clearly in favor of the acceleration of remainders where an intermediate estate or trust fails. *Jull* v. *Jacobs* (L. R. [3 Ch. Div.] 703) decides that a remainder limited upon a void life estate takes effect immediately. To the same effect is *Clark* v. *Randall* (L. R. [31 Ch. Div.] 72). An interesting discussion upon this subject is found in the leading case of *Tregonwell* v. *Sydenham* (3 Dow's Cases, 194), decided in the House of Lords in 1815. The Court of Exchequer had previously decided that certain term trusts were void and that the term attended the inheritance fixed by the will. The House of Lords reversed this decision upon the ground that if said trusts were, or for any reason became, invalid, they resulted for the benefit of the heir at law. But the decision was based upon technical reasoning which has no application to the facts of this case or to these times. In *Sidney* v. *Shelley* (19 Ves. 352) the Court of Chancery held that a devise to trustees upon certain trusts stated to be "hereinafter expressed," but in fact not declared, left the term to attend the inheritance *according to the limitations of the will*, and no resulting trust for the heir. (See, also, *Davidson* v. *Foley*, 2 Brown's Ch. 212.) It must be admitted that there is much confusion and apparent diversity of opinion in the English decisions upon this subject, arising in large part no doubt from the technical refinements which have no place on our own modern real property laws. It has been suggested that the reason for the English rule favoring the acceleration of remainders is that in England the failure of the prior estate almost invariably destroys the remainders limited upon it. It is true that in this State the statute (Sec. 48, Real Prop. Law) expressly provides that no remainder, valid in its creation, shall be defeated by the determination of the precedent estate before the happening of the contingency on which the remainder was limited to take effect. Notwith-

standing this statute, cases may arise in which, as in the case at bar, its provisions are rendered partly or entirely nugatory by conditions which demand some practical means to a just and equitable end. There is nothing in this statute which prohibits, even by implication, the rule which we favor herein. On the contrary, it seems to be designed to meet some of the hardships of the old common-law rule which so often conflicted with a contrary testamentary intent. .

The judgment herein should, therefore, be affirmed, with costs in accordance with the foregoing suggestions respecting the parts of the will which are held to be valid and those which are declared to be void.

Parker, Ch. J., Gray, O'Brien, Haight, Landon and Cullen, JJ., concur.

Judgment affirmed.