# In the Matter of the Estate of ALFONSO SEMENZA, Deceased.

Surrogate's Court, Bronx County, May 15, 1936.

*Esther Antell*, for the petitioners, Anthony Semenza and Antoinette Semenza, legatees.

*Joseph F. Toomey*, for the executor, respondent.

*Harold J. Moran*, for the executrix, respondent.

*Hardin Hess & Eder* [*Monroe Collenberg* of counsel], for the Royal Consul General of Italy at New York.

*John J. Bennett, Jr.*, [*Robert P. Beyer* of counsel], *Attorney-General*.

*Lazarus Joseph*, special guardian.

HENDERSON, S. The petitioners ask for a construction of the decedent's will. It was written in Italian by a notary public and its translation reads:

" The year Nineteen Hundred Thirty Four, September 29th, in the City of New York, County of New York, United States of America, in my office at 526 Broadway.

" Before me, Giuseppe Migliaccio, Notary Public, for the City of New York, with Offices at the said 526 Broadway, and in the presence of:

" 1. Filippo Rampolla di Luigi
" 2. Stefano Bellissimo fu Bruno
" 3. Maria Assamoneo di Felice
" 4. Giuseppe Cantale di Liborio
" witnesses known, able and possessing the requirements of the law.

" Mr Giacomo Alfonso Semenza, of the late Angelantonio, also known under the name of Alfonso Sementa, born in Prata (Avellino) and here residing at 1115 Noble Ave, New York, known to me Notary, and to the witnesses, able to transact, being in the fullness of his mental faculties, has declared to dispose of his goods, and to that purpose has communicated in the continuous presence of the aforesaid witnesses his will to me, notary, which will is by myself faithfully put in writing in the following articles:

" 1. Before all, the testator revokes, cancels and annuls any other preceding testamentary disposition of his, wanting that only this be put into effect.

" 2. He declares, furthermore, that the offspring of the legittimate marriage with Maria Antonia Tenneriello, was a son named Ettore Gaetano Angelantonio Semenza.

" 3. It is the testator's will to leave half of the life interest of all his goods, estate, and personal properties, of any kind, and wherever situated, to the mentioned wife, Maria Antonia Tenneriello Semenza, and the other half to the aforesaid son Ettore Gaetano Angelantonio Semenza, with the understanding, that after death of either one of them, the heir who shall survive will get *ipso facto* the interest of the entire estate during his natural life.

" 4. It is the testator's will that at the death of both his said heirs, wife and son, half of the entire estate be given in exclusive benefit of the male children — born and to be born — of the said son Ettore Gaetano Angelantonio Semenza, and that the remaining half be divided in equal parts among all the children of the same, male and female, with the understanding that no one of the same will have the faculty to collect the principal before ten years have elapsed from the day of their mother's death, and that in the meantime the estate shall remain in possession of the Trustees, who shall administrate the said property, and shall pay the interest to the heirs.

" 5. The testator disposes and authorizes his Executors, and Trustees hereinafter named to draw from the estate the sum of $600.00 when they think it opportune, and to use the said sum to place his nephews (grandsons) — sons of Ettore Gaetano Angelantonio Semenza — in an institute in which they could get a religious catholic education with the faculty to the said Executors and Trustees to use the same sum in the manner they will judge opportune, according their judgement and discretion.

" 6. The testator authorizes his Executors and Trustees hereinafter named to sell his house located at 1115 Noble Avenue, New York, any time they will judge opportune and convenient in the heirs interest, and to utilize proceeds derived, or part of same for the acquisition of another house that, always at their discretion and judgement, could respond better to the heirs exigencies.

" 7. The testator gives faculty and authorizes the Executors and Trustees, hereinafter named, to put aside a certain sum of money in order that every year there may be celebrated two high masses, for the suffrage of his soul, exactly one on March 29th, of each year (his birthday), and the other on the anniversary of his death.

" 8. It is the testator's will that in case of death of all his heirs before named, without living descendants, his entire estate be given and divided in equal parts among the living children of his late brother Carmine Sementa, residing in New York, among the children of his sister Maria Letizia Sementa, widow Nuzzolillo, residing in Brooklyn, New York, and the children of his brother Giuseppe Sementa, residing in Prata (Avellino) Italy.

" 9. The testator nominates his testamentary Executors, and Trustees, the Pastor of the Church " Madonna del Suffraggio " at 151st Street, and Morris Avenue, New York; Mr. Raffaele Preziosi of 1676 — 12th Street Brooklyn N. Y. and Mrs. Francesca Lisiena Nuzzolillo, residing at.....................Brooklyn, N. Y. or he, or they of them that will accept the charge and will be fit; and disposes that they be exonerated to furnish any security.

" Of this testament I have given reading and explanation with clear and intelligible voice to the testator, that this testament fully conforms to his will, in which he intends to persist.

" Made and published at the aforesaid place in the presence of the testator, and of the repeated four witnesses, who with me and the testator himself subscribe this Testament."

When the testator made his will, his wife, his son and only child, his son's only son and only daughter and their mother, were and now are living. The testator had no other grandchild and none has been born since his death. His widow and his son are his only distributees. Several nephews and nieces of the parentage named by the testator survived him.

In searching for testamentary intent, the several parts of the will must be read together, but consideration must also be given to the fact that this testator has made his disposition in separate and complete paragraphs.

It clearly appears from the will that the dominant purpose of the testator was to provide for his wife and his son during their respective lives and to give his residuary estate, subject to such provision, to his son's children, whenever born — one-half to his grandsons and one-half to all his grandchildren.

In paragraph 3 he made such provision for his wife and his son by giving them, in clear and decisive language, legal life estates in all his property. (*Matter of von Kleist*, 265 N. Y. 422, 426.) The *quantity* of their estates he later reduced or attempted to reduce by clearly expressed dispositions hereinafter discussed, whereby the third and fourth paragraphs constitute, in effect, a residuary clause. There is no subsequent language, however, so clear and definite as to diminish the *quality* of their estates. It is apparent that the testator used the Italian words translated as " heir " and

" heirs," not in their technical or legal sense, but as denoting " beneficiary " and " beneficiaries. " In the various instances of their employment they necessarily refer respectively first to his wife and his son, then to his grandchildren only and finally to his wife, his son and his grandchildren collectively. It is also apparent that the words " and that in the meantime the estate shall remain in possession of the Trustees, who shall administrate the said property, and shall pay the interest to the heirs," in paragraph 4, refer to the periods intervening between the death of the survivor of his wife and his son and the respective dates to which he attempted to defer each grandchild's possession of its share in the estate.

The widow and the son each have a legal life estate in one-half the residuary estate, and their survivor has a successive legal life estate in the half theretofore devoted to the other life tenant.

The gift to his grandchildren is expressed in paragraph 4. The suspension therein provided to commence after the life estates is for a period of time, is entirely void and cannot be given effect. (Real Prop. Law, § 42; Pers. Prop. Law, § 11; *Matter of Hitchcock*, 222 N. Y. 57, 70; *Matter of Stulman*, 146 Misc. 861, 867.) However, this provision is of such minor consequence in the testamentary scheme and so subordinate in importance to the dominant purpose of the testator that it may and should be severed from the valid provisions of the will so that the main and lawful intent of the testator be not defeated. (*Matter of Hitchcock, supra*, p. 73; *Kalish* v. *Kalish*, 166 N. Y. 368, 374, 375.)

The will contains only two expressed conditions of survivorship. One determines the owner of the second life estate in half the residuary. The second provides solely for an alternative disposition of the estate in the event that neither the wife of the testator nor any of his descendants survived him. No reference by the testator to survivorship is directed to his disposition of the remainder after the life estates. There is no alternative gift over of this remainder in the event of the death of any grandchild. The disposition of the remainder is not limited to take effect upon any event, certain or uncertain, but constitutes a gift which the uncertain event of the birth of another grandchild or grandchildren might chance to reduce in quantity but not in quality. The gift cannot be divested entirely by the occurrence of any event or events. The testator intended that all his grandchildren, whenever born, should, under every conceivable circumstance, receive the remainder in proportions determinable by their sex. The attempted suspension after the death of the surviving life tenant was merely collateral to such desire. The death of the testator's son, who is one of the life tenants, will necessarily end any possibility of

increasing the number of remaindermen, whether he dies before or after the other life tenant. At his death all possible takers will be known and they will be the same persons who would take the remainder if the provision for suspension, expunged as illegal, had been allowed to run its course. At the testator's death, there were persons in being, his two grandchildren, who would have an immediate right to the possession of the residuary estate, on the determination of all the intermediate or precedent estates. The gift of such remainder to all the testator's grandchildren vested at the testator's death in the two grandchildren who survived him, subject only to the condition subsequent that during the life of their father there may be born other grandchildren who would become vested likewise in the remainder upon their respective births. (Real Prop. Law, § 40; *Oliver* v. *Wells*, 254 N. Y. 451, 457; *Matter of Hitchcock, supra; Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573, 581, 583; *Stringer* v. *Young*, 191 id. 157, 162; *Kalish* v. *Kalish, supra; Matter of Brown*, 154 N. Y. 313, 326, 327; *Losey* v. *Stanley*, 147 id. 560, 567; *Monarque* v. *Monarque*, 80 id. 320, 325; *Moore* v. *Littel*, 41 id. 66, 76, 77, 80; *Matter of Doherty*, 227 App. Div. 265, 268.)

The grandson and the granddaughter are presently vested respectively with three-fourths and one-fourth of the remainder of the residuary estate. Their respective interests, however, are subject to being divested in part only by the subsequent birth of one or more other grandchildren, who become likewise vested upon their respective births with such fractional interests in the residuary estate as may be determined by their respective sex and the number of prior born grandsons and granddaughters.

No trust is created in paragraph 5. The testator intended that the specified amount be used for the benefit of all his grandsons, whenever born. Hence payment thereof may not be directed to the one grandson who survived him. It must remain with the residuary estate devoted to the life tenants whence it will ultimately go to all grandsons in equal shares.

In paragraph 6 the testator gave his executors a valid power to sell and to purchase realty which may be exercised in their honest judgment solely in accordance with the conditions and restrictions expressly attached thereto by the testator.

The direction for the celebration of masses is a valid trust for religious uses. The amount to be set aside for such purpose and the manner of its administration will be determined upon the settlement of the executor's account, and the interested parties may then be heard with respect thereto.

The alternative disposition of the entire estate in paragraph 8 to the living children of the testator's named sister and brothers " in case of death of all his heirs before named, without living descendants," became effective only if all such " heirs " — widow, son, grandsons and granddaughters born·before or after the making of the will — predeceased the testator, and no descendant of any grandchild survived him. There is no intimation of any intent that the will should speak, with respect to such disposition, from any time other than the date when the will would become effective — the date of the testator's death. The event for which the testator thus provided was the death of his widow and of all his descendants, during his lifetime. That contingency did not occur, and, therefore, the nephews and nieces are not interested in his estate.

The life tenants may have possession of the estate given for their use upon filing a bond in an amount to be determined upon the settlement of the executor's account.

Settle decree.