agents of such owner or owners" includes only such agents as are duly authorized by the owner to sign the consent in his behalf. The mere fact that a person is agent for the owner to rent the premises, and to take such charge of them as an agent to rent generally has, is not sufficient to constitute him an agent duly authorized to sign the consent referred to in the statute. It follows, therefore, that the statement in the application of the appellant with reference to the consent of the owners of two-thirds of the dwellings situated within 200 feet was false, and upon that ground the certificate was properly revoked.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.

In re TROTTER'S WILL.

(Supreme Court, Appellate Division, Second Department. April 21, 1905.)

1. WILLS—TRUST—VALIDITY.
   A provision of a will devising to testator's executors and trustees all his real and personal property until all the bequests and annuities provided for are paid, and conditions performed, with power to receive and reinvest according to their judgment, in trust for and subject to the legacies, bequests, and annuities specified, except a certain lease, which the trustees were prohibited from selling, but were required to retain possession of for its full term, was void.

2. SAME—PARTICULAR PROVISIONS—INVALIDITY—SEPARATION.
   Where an invalid trust created by a will was separate from the remainder of the will, which could be upheld and executed independent of such provision, its invalidity did not affect the balance of the will.
   [Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 992–995.]

3. SAME—POWER OF ALIENATION—ILLEGAL SUSPENSION.
   Testator directed that his brother, on notification of his decease, should within three months thereafter elect as to whether he would occupy testator's house, subject to certain prescribed conditions, during the term of the brother's life, together with its described contents, and that, in case he should notify the executors of his intention so to occupy the premises, the executors should pay him certain traveling expenses, and an annuity of $1,000 per annum. *Held* that, since the time specified for the devisee's election must necessarily be exercised within his lifetime, such devise was not invalid as illegally suspending the power of alienation.

4. SAME—DIVISION OF RESIDUE—CONSTRUCTION.
   Where a will postponed the division of testator's residuary estate until "the termination of all life annuities by death of the beneficiaries named," such division could not be had until the death of all such life annuitants, and not pro tanto on the death of each.

Appeal from Surrogate's Court, Kings County.

Application for probate of the will of Charles W. Trotter, deceased. From a surrogate's decree admitting to probate a part of the will only, proponents appeal. Modified.

The provisions of the will referred to in the opinion are as follows:

"First. I give, devise and bequeath to my executors and trustees hereinafter named, all my real and personal property of whatsoever nature or name or wheresoever situate until all the bequests and annuities hereinafter set

forth are paid and conditions performed, with power to lease or sell the same and to collect and receive all property, revenue, interest, rents and profits therefrom and all monies from any source whatever and to invest the proceeds in any manner which, in their judgment, shall be proper and of advantage to said estate; to have and to hold the same and the proceeds in trust nevertheless, for and subject to the following legacies, bequests, annuities and purposes, excepting however a lease between myself and the Lehigh Zinc and Iron Company, a Corporation formed under the Laws of Pennsylvania and August Heckscher, now of the City of New York, dated August 11th 1887 and recorded in Sussex County, New Jersey, as a mortgage and any subsequent agreements made by himself and the same parties relating to the same property, which shall not be sold, assigned or transferred but shall remain in possession of said executors and trustees for the full term thereof."

"Fourth. I direct that my brother Edgar A. Trotter upon his notification of my decease shall within three months after my decease elect as to whether he chooses to occupy my house known as No. 161 Warren Street, Borough of Brooklyn, New York subject to the following conditions: without any power to lease or rent the same or any part thereof, free from the payment of taxes. water rates, insurance, necessary repairs or assessments which may be imposed upon said premises during said term, all of which said encumbrances shall be a charge upon my general estate and shall be paid out of it by my executors and trustees hereinafter named, during the term of my brother's natural life, together with all furniture belonging to me and contained in my house at the time of my decease, including all beds, bedding and bed clothes, carpets and rugs, sofas, bureaus, tables, chairs and desks in any part of the house together with the contents of same including books, papers, pen and pen-holders, coins, knives, magnefying glasses, &c., a six-keyed cocoa wood flute in the 'escritior,' all port folios used on desks, my large Fairchild gold pen and holder, all bric-a-brac, maps, charts, &c., also all oil paintings, steel engravings, lithographs, chromos, colored supplements to 'London Times,' photographs, tintypes, dagherreotypes, ambrotypes, and photograph albums, also Harpers illustrated bible, all crockery, chinaware, tea-trays, knives, forks. spoons, (solid or plated ware) kitchen utensils &c., also all table and toilet articles, napkin rings, six tin boxes containing law papers &c., electric machine (static) also all mineral specimens and curios of every description and iron safe contained in my house, also all my books bound and unbound of every kind and description not otherwise disposed of, which is in my house at the time of my decease, also any article of wearing apparel of mine or my late son William F. Trotter, that my said brother Edgar A. Trotter may select.

"Said Edgar A. Trotter shall within three months after my decease notify my executors and trustees of his decision and in case he shall choose to occupy the aforesaid premises under the conditions hereabove named, I direct my executors and trustees to remit to him sufficient current funds to pay the transportation of himself and family from National City California to this place. And I further direct that after his arrival at my present home he shall be paid a quarterly annuity of One thousand dollars per annum."

"Sixteenth. The remaining proceeds of my residuary estate is to be held by my executors and trustees for payment of life annuities of any beneficiaries then living and herein provided for and upon the termination of all life annuities by death of the beneficiaries named, then the said remainder of my estate to be divided in the manner provided for in the Fourteenth clause of this Will."

### Second Codicil.

"E. Whereas by the Sixteenth paragraph of my said last Will and Testament I provided 'the remaining proceeds of my residuary estate is to be held by my Executors and Trustees for payment of life annuities of any beneficiaries then living and herein provided for and upon the termination of all life annuities by death of the beneficiaries named, then the said remainder of my estate to be divided in the manner provided for in the Fourteenth clause of this Will.'

"Now therefore I do by this my Codicil, revoke, cancel and annul said paragraph and declare same null and void and in lieu thereof do make the following provisions, viz.:   The remaining proceeds of my residuary estate is

to be held by my Executors and Trustees for payment of life annuities of any beneficiaries then living and herein provided for and upon the termination of all life annuities by death of the beneficiaries named, then the said remainder of my estate be divided pro rata among the residuary legatees named in the Fourteenth paragraph of my last Will and Testament as their shares are therein set forth."

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, RICH, and MILLER, JJ.

Frank G. Wild, for appellants Trotter.
Joseph W. Bishop, for appellant Adeline Watts.
William W. Niles, for appellant Elizabeth A. Ridley.
Robert Leslie Moffett, for respondent Edgar T. Van Deusen.

WILLARD BARTLETT, J.   We agree with the learned surrogate that the trust attempted to be created by the first paragraph of the will is void.   He was also right in holding that the invalidity of this trust did not wholly destroy the will.   An ineffectual attempt to create a trust estate does not affect bequests which are otherwise valid.   Everitt v. Everitt, 29 N. Y. 39, 82.   Where a will is good in part and bad in part, the good portions should be preserved, if they are separable and capable of being carried out in fulfillment of the general plan of the instrument.   Kalish v. Kalish, 166 N. Y. 377, 59 N. E. 917; Smith v. Chesebrough, 176 N. Y. 317, 68 N. E. 625.   The Kalish Case declares the rule to be firmly established in this state "that, when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but, when it is possible to cut out the invalid portions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be"; and in Smith v. Chesebrough it was expressly held that, where the invalid parts could be expunged without essentially changing or destroying the testator's general testamentary scheme, the valid parts of the will should be upheld.   We think that the learned surrogate has given the appellants the full benefit of this rule, except in one instance.   It seems to us that the life estate in the Warren street house, in Brooklyn, devised to Edgar A. Trotter by the fourth paragraph of the will, may be upheld.   The time given to the devisee within which to elect whether he will occupy the premises or not is not an illegal suspension of the power of alienation, since it must necessarily be exercised within the devisee's lifetime; and the devise is quite as distinct and separable from the objectionable portions of the will as the other testamentary provisions, which have, as we think, been properly sustained by the decree under review.

By the provision in paragraph E of the second codicil, substituted for the sixteenth paragraph of the will, the division of the testator's residuary estate is postponed until "the termination of all life annuities by death of the beneficiaries named."   In behalf of the life annuitants, who are at least four in number, we are asked to construe this provision as directing the distribution of the residuary

estate upon the death of each annuitant, instead of after the death of all, or else to disregard the provision altogether. The language of the testator is too plain to permit the adoption of the construction suggested, and it is not clear that the testator's intent as to the final disposition of his residuary estate would be carried out if the provision were wholly disregarded. It is quite conceivable that the residuary legacies might have been different, both as to beneficiaries and proportionate shares, if the testator had not supposed that the residuary estate could be preserved intact until the termination of all the life annuities.

Concurring, as we do, in the results reached by the learned surrogate, with the exception which has been noted, it follows that his decree should be modified so as to adjudge the devise of the life estate to Edgar A. Trotter to be valid; and, as thus modified, the decree should be affirmed.

Decree of the Surrogate's Court of Kings county modified so as as to adjudge that the devise of the life estate to Edgar A. Trotter is valid, and, as thus modified, affirmed, without costs of this appeal. All concur.