In the Matter of the Application for a Compulsory Accounting by ANNA MARY GRACE and Another, as Executrices and Trustees, etc., of MARY D. GRACE, Deceased, and for the Revocation of Letters Testamentary Issued to Said ANNA MARY GRACE and Another, as Such Executrices, and for Their Removal as Such Trustees,

Consolidated With

In the Matter of the Judicial Settlement of the Accounts of ANNA MARY GRACE and Another, as Executrices, etc., of MARY D. GRACE, Deceased.

WILLIAM D. J. GRACE, Appellant; ANNA MARY GRACE and Another, as Executrices and Trustees, etc., of MARY D. GRACE, Deceased, Respondents.

In the Matter of the Application of ANNA MARY GRACE and Another, as Executrices and Trustees, etc., of MARY D. GRACE, Deceased, for a Construction of Said Will.

WILLIAM D. J. GRACE, Appellant; ANNA MARY GRACE and Another, as Executrices and Trustees, etc., of MARY D. GRACE, Deseased, Respondents.

Fourth Department, March 18, 1931.

*William M. Kilcullen*, for the appellant.

*Frank J. Cregg*, for the respondents.

EDGCOMB, J.   Mary D. Grace died on January 15, 1918, leaving a last will and testament, which has been duly admitted to probate by the surrogate of Onondaga county.

Three proceedings have been instituted in the Surrogate's Court of Onondaga county, one to compel the executrices and trustees to account and to remove them from office, one to judicially settle the accounts of said executrices, which they filed after the institution of the first proceeding, and the other to have the will judicially construed.   The surrogate dismissed the first application and granted the second by one decree, and in separate decree construed the will.   William D. J. Grace, a son of decedent, was dissatisfied with all three decisions, and has appealed to this court.

Upon motion of appellant's attorney the surrogate at the trial

granted an order to consolidate the three proceedings. By virtue of sections 260 and 309 of the Surrogate's Court Act the first and second proceedings may be deemed, for the purposes of these appeals, as the first proceeding, and the proceeding for the construction of the will, as the second proceeding.

Mrs. Grace had three sons, William, George and John Charles, and two daughters, Anna and Catharine. Her husband predeceased her by some years. She lived in Syracuse with her two daughters, neither of whom was ever married. John Charles was incompetent, and had been confined in the State hospital at Ogdensburg for several years prior to his mother's death. William had been given more than his share in his mother's estate sometime prior to the execution of her will. He was the only child who was married, or who had any descendants.

The will is dated August 17, 1914. After making several specific bequests in the first eight paragraphs, which are not important to this decision, testatrix, by the 9th, 10th and 11th clauses, created a trust, which is the bone of contention here. In the 9th clause she gives the residue of her estate to her two daughters in trust for the use and benefit of her four children, Anna, Catharine, George and John Charles, and directs that the net income thereof be paid quarterly as follows: One-quarter to Anna Mary Grace; one-quarter to Catharine Rose Grace; one-quarter to George C. A. Grace. "The remaining one-fourth of said net income to be retained by said trustees for the use and benefit of my son, John Charles Grace, to provide for his necessary needs, comfort and maintenance."

In the 11th paragraph testatrix provides that, if any of her children named in the 9th clause of the will die, leaving issue surviving, the trust as to such deceased child shall terminate, and the share or portion belonging to the child thus dying shall pass and belong to his or her lawful issue, share and share alike. The contingency of any of testatrix's children dying without issue is taken care of by the 10th clause of the will. That paragraph reads as follows: "In the event of death of either of my said two daughters, or of my said two sons, viz., George C. A. Grace or John Charles Grace, leaving no lawful issue her or him surviving, then I will and direct that the share of my estate herein bequeathed and devised in trust for the benefit of my daughter or son thus dying shall, in equal shares, belong to, and the net income therefrom shall, in equal shares, be paid to all of my surviving children, including William D. J. Grace, if he be then living, and in case he be then dead, to his lawful issue, if he leaves such issue.

"The trust hereby created shall thereupon continue in full force and effect for the benefit of my remaining four children, so long as

they shall all live, but in the event of the death of one or more of them, leaving no lawful issue her or him surviving, then I will and direct that the trust pertaining to and impressed upon her or his share of my estate shall cease and terminate, and her or his share of my estate shall thereupon pass and belong to my next of kin and heirs at law, pursuant to the statute in such case made and provided, and that the trust hereby created shall then continue in force for the benefit of my remaining children, and shall finally cease and terminate only after the death of the survivor of my said children, and thereupon and at that time, the balance of my estate shall pass and belong to my next of kin and heirs at law, pursuant to the statute in such case made and provided."

On December 1, 1914, Mrs. Grace added a codicil, which provides as follows: " In case my son, George C. A. Grace, or either or both of my daughters mentioned in the ninth paragraph of my said last will and testament, should die without issue before the death of my son John Charles Grace, then and in that event, it is my wish and desire, and I hereby will and direct, that the share of such deceased son or daughter shall remain a part of the trust fund created by said ninth clause, the net income from said share to be paid quarterly to the surviving child or children mentioned in said ninth clause, and to my son William D. J. Grace in equal shares, and I further will and direct that the ownership of no part of my estate shall vest absolutely in my son John Charles Grace, but any money or property which would otherwise descend to him by the terms of my said last will and testament shall be held in trust for him by my trustees mentioned in my said will during his lifetime, as provided by the ninth clause of my said last will and testament."

The will and codicil must be read together, and wherever the provisions of the will are changed by the codicil, the latter governs. That is expressly provided in the codicil where the testatrix declares: "Any and all provisions of my said last will and testament in conflict with the provisions of this codicil I hereby cancel, revoke and set aside."

It is unnecessary to enter into any lengthy discussion of the proper interpretation to be given to this will and codicil, because, with the codicil read into the will, in our opinion, the trust which decedent attempted to create is void as contrary to the Statute against Perpetuities. (See Real Prop. Law, § 42; Pers. Prop. Law, § 11. See, also, Laws of 1929, chap. 229, amdg. said sections.)

The will speaks as of the date of Mrs. Grace's death. Whether or not it violates the Statute against Perpetuities must be determined as of that date and not as of some subsequent time. Its validity depends not on what has occurred since the death of testa-

trix, but upon that which might have happened the very day she died. (*Matter of Wilcox,* 194 N. Y. 288; *Herzog* v. *Title Guarantee & Trust Co.,* 177 id. 86, 99; *Simpson* v. *Trust Co. of America,* 129 App. Div. 200, 203; affd., 197 N. Y. 586.)

When testatrix drew her will it is quite evident that she had in mind the fact that a lawful trust could not be created if the power of alienation was suspended for a period longer than two lives in being. A proper construction of that instrument shows that she kept well within the statute. But when it came to execute her codicil, testatrix evidently forgot all about the limitations which she could put upon the vesting of her estate. It is the codicil which causes all the trouble here. Decedent did not want the title to any of her property to vest in her incompetent son. Her intent is clear. If her directions were to be carried out, and John Charles outlived all his brothers and sisters, a part of his mother's estate would, before it could possibly vest, come down through five lives in being, a part through four, and still another part through three lives. This clearly comes within the ban of the statute.

I am not unmindful of the rule stated in *Roe* v. *Vingut* (117 N. Y. 204, 211) and *Phillips* v. *Davies* (92 id. 199) that of two or more constructions, all of which are reasonably possible, the one which will sustain the validity of the instrument is ordinarily to be preferred to the one which will defeat it. I have not overlooked the rule laid down in *Kalish* v. *Kalish* (166 N. Y. 368); *Smith* v. *Chesebrough* (176 id. 317); *Underwood* v. *Curtis* (127 id. 523); *Matter of Trotter* (104 App. Div. 188; affd., 182 N. Y. 465) and kindred cases, that when invalid provisions of a will may be eliminated so as to leave intact the parts that are valid, and preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be. My attention has been called to numerous decisions where objectionable provisions have been cut out of a will by judicial decision, and the parts which are good have been saved. But that can only be done when that which is illegal can be removed without harm, and when a perfectly good and workable will is left. Judicial surgery cannot be resorted to, to borrow the language of Judge POUND in *Matter of Trevor* (239 N. Y. 6, 18), where it is necessary to " perform a radical operation to remove a malignant growth where either the disease or the operation will take the life out of the testamentary document."

It is impossible for me to figure out with any degree of accuracy how much of this estate might eventually come down through more than two lives in being at the date of testatrix's death. The good and the bad are so closely interwoven and intermingled that they

cannot be separated without taking the life of the instrument. The trust must, therefore, fail altogether.

I have, therefore, reached the conclusion that all of the provisions of the will after the 8th paragraph are void, and that the decedent died intestate as to the residuum of her estate.

The fact that all the parties have from the outset acted upon the assumption that the trust was legal and have never questioned its validity, and the further fact that one-quarter of the income of the corpus has been paid regularly to each of the children mentioned in the 9th paragraph of the will until George died in February, 1926, and that thereafter five-sixteenths of said income has been paid to each of the three remaining children, and the other one-sixteenth to William, does not change the situation. While the construction given to a will by the members of decedent's family is a circumstance entitled to great weight (*Starr* v. *Starr*, 132 N. Y. 154; *Smith* v. *Bartlett*, 79 App. Div. 174), it is not sufficient to make valid that which the statute has declared invalid.

When John Charles died on November 21, 1927, the executrices took the position that the trust terminated upon his death, and they then proceeded to distribute the remaining assets in their hands as executrices and trustees equally between themselves and their brother William, the surviving children of testatrix. The surrogate has upheld such construction of the will. Although the appellant took issue with this contention, and insisted that the trust for each surviving child continued until the death of that child, and as each died, after the first, his or her share vested in his or her descendants, if any, and otherwise in the next of kin or heirs at law of decedent, he accepted and has retained the third of his mother's estate which the executrices have turned over to him, and has never tendered back any part thereof.

If I am right in my conclusions that Mrs. Grace died intestate as to the residuum of her estate, appellant would be entitled to one-fifth part thereof. He has been paid one-third. He has, therefore, received more than his share. His sisters, however, have not appealed from the decree of the surrogate, and the overpayment cannot be recovered in this proceeding.

Appellant claims that the account of the executrices should be surcharged with various items for which they have not accounted. It is unnecessary to go into these items.

In 1902 and 1903 Mrs. Grace advanced appellant $47,175.39, and in consideration thereof he executed an agreement in which he released all of his interest in her estate, both real and personal, and all his claims in expectancy in case of her death, as an heir at law, if he should survive her, until after each of his sisters and his two

brothers, if they survived their mother, had received, either personally or as beneficiary of a trust created for their benefit by their mother, or as their mother's heir, or by any or all of said means, property, either real or personal, or both, amounting in value to $38,000. Neither John Charles nor George ever received from their mother any such sum. George received $10,496.27, and John Charles received, or there was expended for his benefit, the sum of $9,445.29. Charging to the executrices' account every item with which appellant claims they should be charged, the total sum to be distributed would not be large enough so that either George or John Charles would get $38,000 from their mother's estate, or bring the estate up to the point where appellant could demand any part thereof. Until that time appellant is not in a position to complain.

For the reasons above stated, the decree of the surrogate construing the will should be modified as herein indicated, and the other decree appealed from should be affirmed.

Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

In accounting proceeding: All concur, except SEARS, P. J., and CROUCH, J., who dissent and vote for reversal on the law and a remittal of the matter to the Surrogate's Court for further proceedings, in an opinion by SEARS, P. J.

In will construction proceeding: All concur, except SEARS, P. J., and CROUCH, J., who dissent and vote for modification in accordance with dissenting opinion by SEARS, P. J.

SEARS, P. J. (dissenting). I reach the conclusion that the will and codicil of the testatrix may be so construed as to effectuate in the main the testatrix's intent, and that a complete intestacy has not resulted.

The provisions of the will and codicil are sufficiently stated in the prevailing opinion, so that it is not necessary to repeat them here. Construing the will and codicil together, as we must, I reach the conclusion that under article 9 of the will the residuary estate is to be held in trust and the income on one-quarter paid to the testatrix's daughter Anna Mary for life, on another quarter to her daughter Catharine Rose for life, on a third quarter to testatrix's son George for life, and on a fourth quarter applied to the use of her son John Charles for life. These quarters of the residuary estate I call, for convenience, the primary shares. On the death of each of these beneficiaries leaving children, the primary share upon which the child dying received the income passes in fee to such child's issue (Article 11 of the will). On the death of any of these beneficiaries without issue, by the 10th clause of the will read

in connection with the codicil, the primary share upon which the child thus dying had been receiving the income is to continue to be held in trust and divided into as many shares as there remain then surviving children of the testatrix, including besides the four children already named, another child of the testatrix named William. For convenience I call the shares into which a primary share is thus divided secondary shares. The income on these secondary shares is to be paid respectively to such surviving children of the testatrix for their respective lives. It is apparent that as to each secondary share, the will has by these provisions suspended the absolute power of alienation for two lives, *first*, the life of the beneficiary as to the primary share from which the secondary share is derived, and *second*, the life of the respective beneficiary as to such secondary share. On the death of each beneficiary in respect to a secondary share, there must then be a disposition of the principal of such secondary share in absolute ownership. (*Vanderpoel* v. *Loew*, 112 N. Y. 167.) I agree with my associates, as I understand the prevailing opinion, that the will, without the codicil, made such an absolute disposition of each secondary share upon the death of the beneficiary in respect to such secondary share. This disposition was to the beneficiary's issue, if any, and in default of issue, to the next of kin of the testatrix. The will could, therefore, without the codicil have been supported as a valid instrument, except possibly in respect to the provision for the issue of William. The clause in respect to the issue of William contained in the 1st paragraph of the 10th article of the will need not now, however, be considered because it is revoked by the codicil.

Turning now to the codicil, there is a provision for a further trust for the life of John Charles of any part of the residuary estate which, under the terms of the will, might otherwise be distributed to him in absolute ownership. As to any part of a secondary share which would by the terms of the will pass to John Charles, this provision is clearly invalid as suspending the absolute power of disposition for more than two lives.

The question then arises whether the invalid part of the testamentary distribution, that is, the trust for the benefit of John Charles in those parts of the residuary estate which would otherwise have come to him in absolute ownership upon the distribution of secondary shares can be cut out and declared invalid and the remainder of the will supported. In my opinion this can be done. The question always is whether the invalid portion of such a distribution is so subordinate in importance and so separable in function that it may be cut off without interfering with the main purpose of the testator. (*Matter of Trevor*, 239 N. Y. 6; *Matter of*

*Colegrove*, 221 id. 455; *Matter of Gallien*, 247 id. 195; *Matter of Horner*, 237 id. 489.) Cutting off the provisions for John Charles in the distribution of secondary shares defeats one intention of the testatrix, namely, an intention to prevent John Charles from receiving in absolute ownership any part of the residuary estate. That intention is unquestionably impossible of accomplishment under the terms of this will and codicil. The invalidity of this provision so permeates the distribution of secondary shares, as to which the beneficiary dies without issue, that an intestacy must be held to result in that event as to such secondary shares. Admitting the invalidity of the disposition of any such secondary share, the general intention of the testatrix to hold her estate in trust for her children so far as the primary shares are concerned and so far as secondary shares are concerned, still remains. This, I believe, was the principal purpose of the testatrix. No invalidity permeates these provisions. I reach the conclusion, therefore, that the will and codicil are valid, except only as to the distribution of those secondary shares, the beneficiary in respect to which dies without issue. As to such secondary shares, there is an intestacy.

The decree construing the will should be modified in accordance with this opinion, and as modified affirmed. The decree in respect to the accounting should be reversed and the matter remitted to the Surrogate's Court to make such provision as will be necessary to carry out the terms of the will as construed and to pass upon the objections of the appellant.

CROUCH, J., concurs.

In accounting proceeaing: Decree affirmed, with costs to respondents payable out of the estate.

In will construction proceeding: Decree modified on the law in accordance with the opinion, and as so modified affirmed, without costs of this appeal to any party.