In the Matter of the Estate of WILLIAM E. LEWIS, Deceased.

Surrogate's Court, Oneida County, June 5, 1933.

*Miller & Hubbell,* for the executors.

*James T. Cross,* special guardian for minors.

*Edward M. Brown,* special guardian for minors.

*Mason F. Sexton,* special guardian for minors.

EVANS, S.   William E. Lewis, a prominent citizen of the city of Utica, N. Y., died on January 2, 1932.   He left a last will and testament bearing date January 3, 1928, and a codicil thereto dated February 18, 1931.   These instruments were admitted to probate in this court on January 18, 1932.   This is a proceeding for the construction of certain portions of the will and codicil. Mr. Lewis was an attorney and drew both instruments.   It is not as a lawyer, however, that he will be remembered but because of his conspicuous success in the development of hydro-electric power. The valuation of this estate is in excess of a million dollars.   The testator is survived by a daughter Laura Lewis Norris as sole heir-at-law, next of kin and distributee.   The importance of this proceeding is apparent as it involves the distribution of practically the entire estate.   The testator, after making certain general legacies, gave the residue of his property to his executors and trustees in trust to carry out the various provisions of his will.

The " third " paragraph of the will directs his executors and trustees to pay to his sister, M. Nellie Evans, from the income of his estate the sum of $10,000 annually, payments to be made quarterly during her life, and to a niece, Mary Branch Cochran of Charleston, W. Va., out of the income of the estate the sum of $10,000 annually, payments to be made quarterly during her life.

This last provision to Mary Branch Cochran was later modified by the codicil by reduction of the annual payment from $10,000 to $3,000.

The " fourth " paragraph of the will directs the executors and trustees to pay over the sum of $70,000 annually to his daughter Laura from the net income of the estate, payable quarterly during her life.

The codicil directs the executors and trustees to pay annually from income the sum of $500 each to cousins of the testator, viz.: Hattie McAllister, Long Beach, Cal.; Mabel Prohaski, Long Beach, Cal., and Marie Lewis, Los Angeles, Cal., so long as each may live.

The will further provides that in case his daughter Laura is survived by issue, then the said sum of $70,000 shall be expended by the executors and trustees for the suitable support and education of such issue, share and share alike, until the youngest of said issue arrives at the age of twenty-eight years, at which time the trust fund is to be equally divided among said surviving issue, reserving sufficient funds to make the annual payments to the sister of the testator, M. Nellie Evans, and his niece, Mary Branch Cochran, as heretofore provided.

In the event that the daughter of the testator leaves no issue, or if she leaves issue none of whom shall survive her to reach the age of twenty-eight years, and if said issue leave no issue surviving, being grandchildren of Laura, then in that event the executors and trustees are directed to pay over to the descendants of a deceased sister of testator, Annie Lewis Branch, one-half of the estate so held in trust, including accumulations, to such descendants as a class, share and share alike; and the other one-half, including accumulations, is directed to be paid over to the descendants of Lewis Lewis, the grandfather of testator, *per capita*, share and share alike, excepting those descendants already provided for as the descendants of Annie Lewis Branch.

The problem presented requires a search for testamentary intent and, when that is ascertained, a determination whether that intent can be given legal vitality.

It is clear that the testator was actuated by a generous impulse to care for persons whom he considered the natural objects of his bounty.

It also appears plain that the testator intended to exclude his daughter from sharing in any portion of the corpus of the estate and to confine her interest to income alone, not exceeding $70,000 annually.

The language of the will supports the inference that the testator aimed to preserve intact the major portion of his estate to be managed by the executors and trustees with the same freedom that the testator might if living.

Courts recognize an imperative duty to sustain wills if there can be found legal sanction for such action.

What may appear to be a single trust measured by the lives of several people may yield to a course of reasoning whereby such a trust is capable of division into several trusts and thus free it from statutory restrictions.

Such a result must have support of an intent of the testator gathered from an analysis of the will as a whole.

Section 11 of the Personal Property Law and section 42 of the Real Property Law require that the duration of a trust that suspends the ownership of personal property and the absolute power of alienation of real property may not be so suspended beyond two lives in being at the death of the testator.

If by any possibility the suspension may continue longer, then the trust fails. (*Underwood* v. *Curtis*, 127 N. Y. 523; *Schettler* v. *Smith*, 41 id. 328.)

This leads to a consideration whether the testator established one trust or several. A view of the provisions of the will from different angles reveals one dominant note to preserve unity. Payments from income of the estate are directed for the benefit of his sister, his daughter, his cousins and his niece. There is no suggestion of segregation of any portion of the estate to support these gifts. The entire estate is subjected to the burden.

Where reference is made in the will to these gifts, the testator uses the singular " trust " and never the plural " trusts."

A gift from the income in its entirety is evidence of the creation of one indivisible trust. (*Central Trust Co.* v. *Egleston*, 185 N. Y. 23.)

The testator does not dispose of the principal of his estate on the death of his sister, his niece or his cousins. He makes no disposition of the income on the death of these persons. He evidently thought that the trustees might accumulate income. He directs his trustees to invest and reinvest the unexpended balance or balances of his estate's net annual income in certain securities.

The provision for the accumulation is, of course, invalid. (Real Prop. Law, § 61; *Pray* v. *Hegeman*, 92 N. Y. 508.)

In directing attention to that portion of the will in which reference is made to the issue of Laura Lewis Norris, the daughter of the testator, it is clear that the testator intended to include all children of his daughter, whether born before or after the death of the testator. She now has three children.

Upon the death of the testator's daughter, the $70,000, which the trustees were directed to pay to her during life from the income of the estate, is to be applied to the support and education of the surviving children of his daughter until the youngest child arrives at the age of twenty-eight years. The trust thus includes possible

after-born children contrary to statute. (*Matter of Wilcox*, 194 N. Y. 288; *Matter of Grace*, 232 App. Div. 76; *Matter of Hitchcock*, 222 N. Y. 57; *Matter of Chittick*, 243 id. 304.)

I am aware of the efforts and struggle made by courts to salvage portions of wills by a separation of the good from the bad. This process has been termed judicial surgery. (*Matter of Trevor*, 239 N. Y. 6.)

In the case at bar there appears to be no opportunity for such an operation. The testator created one trust measured by the lives of several persons in being and the possibility of some not yet in being. Their interests are so interwoven and compactly united that separation is impossible.

There is no escape from the conclusion that the portions of the will and codicil under consideration are invalid and I so find. Decreed accordingly.