Joseph A. Cox, S.
The testator died in 1900 and his will was admitted to probate in the same year. The fifth article of the will created a trust in the amount of $500,000 with the income therefrom payable to his widow and upon her death to her son (the testator’s stepson). The testator directed that upon the death of the survivor of his widow and stepson the trust remainder be paid to the lawful issue of the stepson and, in the absence of such issue, that the remainder fall into and become part of the residuary estate.
The sixth article of the will created a trust in the amount of $250,000 for the benefit of the stepson with the trust remainder payable on his death to his issue and, lacking issue, to fall into and become a part of the residuary estate. In this proceeding the trustee is accounting for its administration of these two trusts.
The income of the trust established under the fifth article of the will was paid to the widow during her lifetime and thereafter to her son. His death in 1955 without issue has created construction issues as to the dispositions now required to be made of the remainders of the trusts established under the fifth and sixth articles of the will. The testator’s direction was that, in the event of his stepson’s death without issue, the remainder of each trust ‘ ‘ should fall into and become part of the residue ” of the estate and the question presented is one of identifying the residuary gift.
The ninth article of the will devised and bequeathed to the widow “ one-half part of the rest, residue and remainder ” of the estate. The tenth article bequeathed, “ out of the residue of my estate then remaining ”, seven trusts for named individuals *1014 in the total amount of $270,000. The eleventh article directed that, “ out of such residue ”, a number of general legacies be paid, the twelfth article bequeathed $100,000 to Hampton Norman and Agricultural Institute ‘ ‘ out of the residue of my estate then remaining ’ ’ and the thirteenth article bequeathed “ out of said remainder of my estate ”, securities in the amount of $25,000 to Chapin Home for the Aged and Infirm. The fourteenth article attempted to provide for the replenishment of the trusts under the fifth, sixth and seventh articles in the event such trusts became diminished by unfortunate investments or otherwise and the second paragraph of such article provided: “ All the rest, residue and remainder of the property and estate real personal and mixed, not hereinbefore devised or bequeathed, which at the time of my death shall belong to me, or be subject to my disposal by will, I give, devise and bequeath absolutely and in fee simple as follows: to my nephew Henry Edwards Huntington, if he should survive me, or in case he should not survive me, to his son Howard Huntington. In case neither the said Henry Edwards Huntington nor Howard Huntington should survive me, I give, devise and bequeath all such residue to my wife Arabella D. Huntington, or if she should not survive me, to my son Archer Milton Huntington or if neither said Arabella D. Huntington nor said Archer Milton Huntington should survive me, to the lawful issue of said Archer Milton Huntington, living at the time of my death, in equal parts and shares per stirpes but not per capita.”
It is contended that residuary dispositions are found in both the ninth and fourteenth articles of the will and, accordingly, that the widow’s estate is entitled, under the ninth article, to one half of the subject trust remainders and the estate of Henry E. Huntington, the nephew named in the fourteenth article, is entitled to the remaining one half of such remainders inasmuch as he also survived the testator. A contrary contention is that the true residuary provision is contained in the fourteenth article only, that Henry E. Huntington was the sole residuary legatee and that the remainders are payable to his estate. A third contention is that the trust remainders pass as intestate property of the testator.
In Matter of Union Trust Co. (97 Misc. 581) a portion of this will was construed by Surrogate Fowler. The Surrogate then was concerned with the ultimate disposition of one of the seven trusts created by the tenth article of the will and the question arose because the remainder of that trust had been bequeathed to the issue of income beneficiaries who had died without issue. The Surrogate stated the problem before him *1015 to be whether the trust remainder was payable to Henry E. Huntington, who then was living, as the residuary legatee or such remainder as a residue of a residue was intestate property. It does not appear from the opinion that the testator’s widow then asserted that the ninth article of the will gave her any claim to the fund as a residuary legatee. The Surrogate held that the trust under the tenth article was not a residuary bequest but that it resembled a demonstrative legacy and the true residuary clause was contained in the fourteenth article in the residuary gift to Henry E. Huntingdon.
A similar issue arose before Surrogate Foley who was required to determine the disposition of the remainder of another trust created by the tenth article of the will. The testator had bequeathed the remainder of that trust to the issue of the income beneficiaries who, as in the prior instance, had died without issue. Surrogate Foley, in a memorandum decision, reached the conclusion that Henry E. Huntington was the residuary legatee under the will and that the remainder was payable to his estate (N. Y. L. J., July 1, 1942, p. 6, col. 8).
There is basis for distinguishing the issues in these two earlier decisions from the issue now presented inasmuch as the prior opinions involved trusts which had been carved out of so much of the estate as remained after payment of the bequest to the widow under the ninth article and it is arguable that the fourteenth article, if not the sole residuary clause, at least was the catchall written into the will to avoid intestacy as to any bequests made in the four immediately preceding articles. Without accepting the validity of such an attempted distinction, the court prefers to consider the issue now before it on the merits and, in construing the will, to treat the question as one of first impression.
The estate which the testator disposed of amounted to approximately $37,000,000. The testamentary scheme is easily discernible in the will. The testator’s purpose was to make ample provision for his widow and, accordingly, the early articles of the will bequeathed to her his furniture, household articles, jewelry and other tangible personalty, the use of his art collection, the use of his mansion and the income from half a million dollars. Then, after providing a $250,000 trust for her son by the sixth article and a $1,000,000 trust for his daughter by the seventh article, the testator, by the eighth article, bequeathed two thirds of his shares of capital stock of Southern Pacific Company to his wife and one third of such shares to his nephew Henry E. Huntington and, by the ninth article bequeathed one half of the balance of his estate to his widow. Not until then *1016 did the testator, by articles tenth through thirteenth, provide for relatives, friends and charities and, by the fourteenth article, bequeath the balance remaining after all such payments to his nephew Henry E. Huntington. It is apparent from the foregoing that the testator’s prime concern was for his widow and that he made ample provisions for her it is seen, after making certain preliminary bequests to his immediate family (his widow, daughter and stepson), the testator took the precaution of further providing his widow with half of the remaining balance of his estate before bequeathing sums to other relatives, friends, charities and his nephew. The amount of this additional bequest to the widow was not computable until his death but it clearly was intended as a preferred legacy to be computed and paid when its amount became ascertainable. Only then were other bequests to be paid from such funds as might remain available and, if there was a surplus, it was to be paid to the nephew. It was intended that the nephew would receive whatever residue of the estate might remain after payment of all specific legacies and general bequests. The nephew must be regarded as the intended residuary legatee and the fourteenth article of the will is construed as the true residuary clause.
It is held that the remainders of the subject trusts are payable pursuant to the fourteenth article of the will.
Proceed accordingly.