S. Samuel Di Falco, S.
The testatrix created five separate trusts for five named individuals, and in each ease she directed that upon the death of the income beneficiary, the principal set apart for his or her life use “ shall become part of my residuary estate ”. She bequeathed her residuary estate to her trustees, directing them ‘ ‘ to divide my said residuary estate into three (3) equal parts ”. Each of the three equal parts was set up in a separate trust. The income from the first portion was directed to be paid to Edith S. Barbee, sister of the testatrix, during her lifetime, and after her death, in equal shares, to her nephew and nieces, Carolyn Dalzell, Robert Streuber and Florence Hitter (now Feland) until Florence shall arrive at the age of 40 years. When Florence shall reach the specified age the principal of that trust fund is to be divided among the three of them, the issue of any then dead to take per stirpes the share of their parent. If Florence should die before reaching the age of 40 years, the principal shall be distributed upon her death. The second share of the residue is to be held in trust for the primary life use of Louis Streuber, brother of the testatrix, and after his death for the use of the same nephew and the same two nieces who share in the first residuary trust. In this case, however, the trust is to be held until Carolyn shall reach the- age of 40 years, or until her death if she should die before attaining that age. The nephew and two nieces, or their issue, are also the remaindermen of this trust. The third residuary trust is solely for the benefit of the nephew and two nieces, the income being divided among them until Robert shall attain the age of 40 years or shall sooner die. The disposition of the corpus is identical with that in the other two residuary trusts.
It is at once apparent that each of the five general trusts provides for a primary life use, a division into three parts, and a continuation of two of the parts in further trusts for possible second and third life uses. Concededly the addition of a portion of the general trusts to the third residuary trust would suspend the absolute ownership of that property for not more than two lives and no problem is presented in that respect.
The testatrix made her will on July 24, 1945 and she died on August 16 of that year. The brother of the testatrix (the income beneficiary of the second residuary trust) was the first *215 of the trust beneficiaries to die. He died on March 10, 1948. Three of the income beneficiaries of the general trusts died between August 31, 1951 and July 11, 1955. The other two income beneficiaries are still living. The sister of the testatrix (the income beneficiary of the first residuary trust) died December 20, 1955. The nephew and the two nieces are living. It is stipulated that at the time the will was made, Carolyn was 25 years of age, Robert, 22 and Florence, 20. They are now, respectively, 37, 34 and 32 years old.
The statutory distributees of the testatrix were her sister, Edith Barbee, her brother, Louis Streuber, and two children of a predeceased brother, Carolyn Dalzell and Robert Streuber, who are also two of the three remaindermen of all the trusts. (The third remainderman of all the trusts is the daughter of Louis Streuber.) Incidentally, the three remaindermen are the residuary legatees under the will of Edith Barbee, with the result that the dispute here is substantially between the widow of Louis Streuber, as executrix and sole beneficiary under his will, and the three remaindermen.
The distributable net estate was valued at approximately two and three-quarter million dollars. Four of the five general trusts were in specific amounts totaling $350,000 and the fifth, created to yield a stated income, was set up in the sum of $77,000. In addition to these trusts, the will bequeathed specific legacies of jewelry, paintings and other effects and it made provision for general legacies aggregating slightly more than half a million dollars. Of the five general trust beneficiaries, one was the brother-in-law of the testatrix, Hiram Barbee, two had been employed as maids, and two are described as friends.
The trustees, the remaindermen of the residuary trusts and the special guardian of infant contingent remaindermen of the residuary trusts, contend that the general trusts are valid because: first, paragraph (c) of article twenty-fifth of the will may be construed to be the “ true residuary ” clause so that the direction that the general trusts shall ‘ ‘ become part of my residuary estate ” would mean that they fall into the paragraph (c) trust, which is measured only by the life of Robert Streuber; second, even if there be an unlawful suspension of absolute ownership of the property, the dominant intention of the testatrix can be effectuated by a marshalling of assets.
The decisions in Matter of Union Trust Co. (97 Misc. 581); Matter of Coffin (143 N. Y. S. 2d 179) and Matter of Huntington (9 Misc 2d 1012) are cited in support of the so-called “true residuary doctrine ”. In those cases it was possible to read one portion of the will as representing the real residuary clause *216 notwithstanding the fact that other dispositions were made in what would nominally be the residuary clause. In such cases, a testator disposes of fractions of ‘ ‘ the rest, residue and remainder ’ ’ of his estate, or he directs payment of specific sums or specific property from “the residue of [his] estate”, and he finally bequeaths “ all the rest, residue and remainder ” of his property to other uses. The question whether the last disposition represents the true residuary gift or whether all of the dispositions of “ the rest, residue and remainder” are part of the residuary clause, is important only with respect to lapsed legacies or other property falling into the residue either by express direction of the will or by operation of law. It is apparent that in the cases to which reference was made, it was possible to read the last clause as expressing the intent to carry with it everything that was not thereinbefore expressly bequeathed. Each will must be read against its own background of context and circumstances. Sometimes the intention of the testator is clearly revealed in the will itself. At other times, constructional preferences, such as the preference for validily or for testacy, may play a part in the interpretation. But in all cases the text of the will must be able to bear the construction which is sought to be placed upon it.
There is no room in the will of this testatrix for an interpretation which would make paragraph (c) the residuary clause. Article twenty-fifth of the will directs the executors to divide “ my said residuary estate into three (3) equal parts ”. Paragraph (a) deals with “ one (1) of such equal parts”. Paragraph (b) disposes of “ one (1) of such equal parts ”. Paragraph (c) reads: “ I direct my said Executors and Trustees to invest and reinvest the principal of the third of such equal parts and to collect and receive the income thereof”. To read this will as meaning that all property falling into the residue as otherwise undisposed of, shall pass under paragraph (c) is to ignore the plain meaning of the language used by the testatrix. By the term “residuary estate ”, this testatrix clearly meant the three equal parts disposed of in paragraphs (a), (b) and (c) of article twenty-fifth. She used the words “ my residuary estate ” in disposing of the remainder of each of the five general trusts. Article twenty-fifth begins with the familiar words of the ordinary residuary clause and there follows the direction to divide “my said residuary estate” in three equal parts. There is nothing in any of the subordinate paragraphs of that article to indicate that any one of the three parts is to capture more property passing to the residue than either of the others. A construction which would make para *217 graph (c) the real residuary clause would represent nothing more than a violent attempt to validate a plain violation of section 11 of the Personal Property Law.
Nor is it possible to save the trusts under the doctrine of marshalling assets. It is suggested that the trusts shall be set up so that the trusts under paragraphs (a) and (b) shall consist only of assets that were never allocated to the general trusts and that the trust under paragraph (c) should take as its share all of the general trust remainders and such other property as is necessary to give it an equal one third. If we view this as of the date the trust funds were established, this method of allocation would give two of the equal trusts actual income-producing securities and cash, and it would give the third trust an expectant interest in five groups of assets after they had passed through earlier life uses. That is not what the will directs. The will directs a division of the residue into “ three (3) equal parts ”. It is said that equality would be achieved by taking the present value of the trust remainders after deduction of the value of the life interests, and that the beneficiaries would thus be compensated for postponement of their rights. The division would still be unequal, however, because some of the income beneficiaries would presently receive income while some would have their rights postponed to an unknown future time. Some of them might fail to survive the primary beneficiary and he would never receive anything at all from that part of the trust. Such a division of the residue would be contrary to the plain terms of the will.
We must recognize that the three residuary trusts were actually set up in April, 1947, and that when we speak now of marshalling assets, we speak really of a fictitious marshalling that is designed merely to gloss over an actual violation of the statute against unlawful suspension of absolute ownership. It is argued, of course, that the executors should have so marshalled the assets when they made the distributions and that what is now sought is merely what should then have been done. Any attempt now to recast the distributions, even if such marshalling were justified, would require a readjustment of all the income accounts, with the possibility of surcharges. It would permit certain beneficiaries to wait until the occurrence of events and then to demand a method of distribution different than they would have demanded under a different sequence of events. Marshalling of assets is resorted to chiefly in respect of powers of appointment (see Restatement, Property, § 363), but even where otherwise applicable, its basis is in doctrines of equity (Pomeroy on Equity Jurisprudence [5th ed.], §§ 396, *218 410), and it may not be used to accomplish results that are inequitable. Moreover, assets may not be marshalled contrary to the terms of the will, merely to avoid the impact of the Statute against Perpetuities. (Low v. Bankers Trust Co., 270 N. Y. 143,152.)
It is argued that partial intestacy frustrates the intention of the testatrix pro tanto, whereas any determination that would send the property in the direction of the nephew and two nieces would be in substantial accord with her testamentary plan. It must be remembered, however, that when we speak of her testamentary plan, we must mean the plan drawn by her and expressed by her and not a substitute plan drawn by us. The plan of this testatrix was to provide for the needs of certain former employees, relatives and friends, to supply income to her brother and sister during their lifetimes, and to give all of the remainder of her property to a nephew and two nieces. She did not intend that the younger generation should control the property until they reached an age where she would expect them to handle it prudently, and that age she fixed at approximately 40 years. Ordinarily she could have provided a separate trust for each, with the corpus payable at the age specified, but the necessity of setting up trusts for the brother and sister would complicate such an allocation. It is suggested that the trusts for the brother and sister were subordinate in purpose and in plan, but we have no justification for saying that they played any subordinate part in the thinking of the testatrix. It is clear that the testatrix did plan absolute equality in the treatment of the three remaindermen. She realized that the first two residuary trusts might continue for long or short periods and that there might be a long interval between the two terminations. Hence, all three remaindermen were given equal shares in all three residuary trusts. The age difference between the eldest and the youngest was only five years. Hence, the testatrix provided that each of the three trusts terminate when a different beneficiary attain age 40, and she thus could not only withhold the fund until the beneficiaries reached the approximate age, but she could provide also for each receiving his remainder in installments.
We are not executing the plan of this testatrix if we try to put the remaindermen in possession of the property before any one of them reaches the specified age. Indeed her plan might give nothing to any one of them who failed to survive the termination of a trust, because in that case, his or her issue would take the share originally allocated to him or to her. Nor are we dealing with the testatrix’ plan, if we ignore the first *219 two residuary trusts and route all lapsed legacies or trust remainders through the trust measured by the life of Eobert Streuber. The best that can be said of it is that this kind of amendment or redrafting of her will might very well preserve more of her plan than would any perfectly legal disposition. But it must be plainly recognized as redrafting of the will, not interpretation of it.
The general trusts are valid for the primary life uses. The fractional shares of the terminated trusts which passed into the sister’s trust were validly held in trust during her lifetime. Neither those shares nor the shares which were to pass through the brother’s trust can be held in trust any longer. The remaindermen are not now known with certainty and-hence the remainders cannot be accelerated. (Matter of Durand, 250 N. Y. 45.) The two one-third portions of each of the terminated general trusts must now be distributed as intestate property.
Objection has been filed to the payment of income from the assets of the terminated trusts, but the objection is not directed to any definite sums. The determination of any questions relating to such income is reserved for the settlement of the decree. The compensation of the attorneys for the trustees has been fixed.
Concededly, the one-third share which passes into trust (c) is in all respects validly held in further trust.
Two of the general trusts still continue. The court makes no decision on the disposition of the remainders when such trusts terminate. All questions relating to those trusts are reserved for determination when' the trust terms end.
Submit decree on notice construing the will and settling the account accordingly.