In the Matter of the Estate of John W. Holmes, Deceased. Ruth H. Brown, Individually and as Executrix of Florence L. Holmes, Deceased, et al., Appellants; Marine Midland Chautauqua National Bank, as Trustee under the Will of John W. Holmes, Deceased, et al., Respondents.

Fourth Department, July 1, 1966.

152

*Shane & McCarthy* (*Edward M. Horey* of counsel), for Ruth H. Brown, appellant.

*Shults & Shults* (*C. Everett Shults* of counsel), for Pauline E. Holmes and another, appellants.

*Merrill G. Windelberg* for Shriners Hospitals, respondent.

*Isaacson & Look* (*Daniel A. Isaacson* of counsel), for Marine Midland Chautauqua National Bank, respondent.

*Mary J. Schober* for Mary C. Heffernan, respondent.

*George H. Whitbeck, Jr.,* for Ross Comstock, respondent.

*Robert M. Reiffin* for May Comstock, respondent.

DEL VECCHIO, J. The testator died in 1943 leaving a will executed in 1941 which created a trust of his residuary estate with income, and so much of principal as his trustees might deem necessary for her care and maintenance, to a favored niece Florence for her life; upon her death, income from the trust estate to be divided equally among two nephews and a niece, Clifford, John, and Ruth; upon the death of the latter beneficiaries, "the portion bequeathed to him or her shall then go to the surviving nephews or niece, as the case may be, to be divided equally between them"; and upon the death of the last surviving beneficiary of the trust the remainder to be given to a designated children's hospital. The will also authorized the trustees to apply the sum of $300 from the trust estate toward the funeral expenses of each of the afore-mentioned nieces and nephews.

In this proceeding to settle the surviving trustee's accounts and for construction of the will, the Surrogate has found, from the language of the instrument, an intention on the part of the

testator to create separate trusts in favor of his surviving nephews and niece after the death of the primary life beneficiary Florence. By excising the gifts over provided at the death of the first two of the three secondary beneficiaries the Surrogate was able to sustain the individual trusts as not violative of the statutory prohibition against restraint on the absolute power of alienation for more than two lives in being, which was in effect at the testator's death in 1943. (Personal Property Law, § 11.)

We do not believe the will may reasonably be construed as establishing separate trusts upon the death of Florence. There was no final disposition of any of the corpus until the death of the last survivor of Clifford, John, and Ruth. In this circumstance, only a single trust was created which might have suspended the absolute power of alienation for three additional lives after the life of Florence, thereby violating the provisions of section 11 of the Personal Property Law. (*Matter of Maloney*, 8 A D 2d 756, affd. 7 N Y 2d 863.)

However, it does not follow that the decedent's testamentary disposition must be invalidated in its entirety. The law indulges in a presumption that a person who executed a will intended to dispose of his entire estate (*Matter of Fabbri*, 2 N Y 2d 236, 243); consequently the policy of the courts is to carry out the intention of the testator as far as possible (*Matter of Fischer*, 307 N. Y. 149, 158), by leaning in favor of the preservation of such valid parts of the will as can be separated from those which are invalid (*Matter of Hitchcock*, 222 N. Y. 57, 73) to preserve the general plan of the testator and to prevent intestacy either partial or total. (*Kalish* v. *Kalish*, 166 N. Y. 368, 375.)

We have no doubt that the primary concerns of the testator were, first, to provide for the proper care and maintenance of his favorite niece Florence during her lifetime and, second, to transmit the bulk of his residuary estate to a named charitable beneficiary. To accomplish the first objective, he directed the payment of all income from his residuary estate to Florence during her lifetime and also empowered his trustees to invade principal for her care if they should deem the income insufficient. To effect his second objective, he bequeathed the entire principal of his residuary estate, less only such amounts as the trustees should apply to the care of Florence and minimal funeral allowances for his nieces and nephews, to the designated hospital. The subordinate degree of his concern for his nephews and niece, Clifford, John, and Ruth, is evidenced by the secondary provision for their benefit by which they were to receive

income *only* during their lives, the amount to each to be determined solely by the happenstance of the order of their survivorship.

In view of this clear evidence of the testator's intent gained from the instrument itself, we are satisfied that the general plan of the testator may be preserved by excising entirely that portion of the trust which provided for income payments to Clifford, John, and Ruth, thereby removing that portion which illegally suspended the power of alienation, and by accelerating the ultimate vested gift to the hospital. "No rigid rule can be formulated by which the court can determine in each case whether excision of the invalid portions of a will will leave intact the general plan of the testator." (*Matter of Lyons,* 271 N. Y. 204, 209.) "This is not strictly law; it is matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question." (*Matter of Durand,* 250 N. Y. 45, 53–54.) In our view, the presumable intention and probable desire of the testator would more nearly be served by sustaining the trust for the life of the primary individual beneficiary Florence and by preserving the remainder gift to the charity, than it would be by declaring the entire residuary trust and remainder void and distributing the bulk of testator's property by intestacy to heirs who were never intended to receive any of the principal assets of the estate.

We must therefore reverse the determination of the Surrogate that three separate secondary trusts were created and, but for the fact that no appeal has been taken by the remainderman, would strike out in its entirety the provision for the secondary trust during the lives of Clifford, John, and Ruth, immediately accelerating the remainder. However, only one of the secondary income beneficiaries (Ruth) survived Florence and still survives, and the hospital has not appealed from the Surrogate's decree directing payment of income to Ruth during her lifetime and payment of a funeral benefit on her death, but asks rather that the determination below be sustained. In this circumstance, we will not disturb the decretal paragraphs which provide for such payments. (*Matter of Horner,* 237 N. Y. 489, 504; *St. John* v. *Andrews Inst.,* 192 N. Y. 382.)

Bastow, Goldman and Marsh, JJ., concur; Williams, P. J., concurs in result.

Decree, insofar as appealed from, unanimously modified in accordance with the opinion and as modified affirmed, with costs to all parties filing briefs payable out of the estate.