Samuel J. Silvebmaet, S.
In this trustees’ accounting proceeding the court is called upon to determine the disposition of the remainder in a preresiduary trust for the life benefit of one Lavina Surprenant, and particularly whether the provisions of the will with respect thereto violate New York’s two-life Rule *317 against Perpetuities which was in effect at the time of decedent’s death.
In 1958, my colleague, Surrogate DiFalco, rendered a decision holding similar provisions in this will with respect to certain parallel preresiduary trusts invalid. (Matter of Schuette, 11 Misc 2d 212, affd. 6 A D 2d 1031.)
The will creates five separate preresiduary trusts for five named individuals, one of them Davina Surprenant. As to each trust the will directs that upon the death of the income beneficiary the corpus of the fund “ shall become part of my residuary estate ”. The residuary estate is bequeathed to the testatrix’ trustees, directing them to divide the residuary estate into three equal parts. Each of the three equal parts was set up in a separate trust. The income from the first portion was directed to be paid to Edith S. Barbee, sister of the testatrix, during her lifetime, and after her death, in equal shares, to her nephew and nieces, Carolyn Dalzell, Robert Streuber and Florence Mitler until Florence shall arrive at the age of 40 years. When Florence shall reach the specified age the principal of that trust fund is to be divided among the three of them, the issue of any then dead to take per stirpes the share of their parent. If Florence should die before reaching the age of 40 years, the principal shall be distributed upon her death. The second share of the residue is to be held in trust for the primary life use of Louis Streuber, brother of the testatrix, and after his death for the use of the same nephew and nieces who share in the first residuary trust, until Carolyn shall reach the age of 40 years, or until her death if she should die before attaining that age. The nephew and two nieces, or their issue, are also the remaindermen of this trust. The third residuary trust presents no problems under the Rule against Perpetuities.
As Judge DiFalco said: “It is at once apparent that each of the five general trusts provides for a primary life use, a division into three parts, and a continuation of two of the parts in further trusts for possible second and third life uses. ” (11 Misc 2d 212, 214.)
In 1958, when Judge DiFalco rendered his decision, three of the preresiduary income beneficiaries had died, as had the two life benificiaries, Edith and Louis. The nephew and nieces, Carolyn, Robert and Florence, were all alive but had not yet reached the age of 40. Judge DiFalco held that as to the three preresiduary trusts whose income beneficiaries had died, the provision of the will governing the disposition of the remainders violated the Rule against Perpetuities and accordingly those remainders passed by intestacy.
*318 As to the two preresiduary trusts whose income beneficiaries were still alive, including the trust for Lavina Surprenant, Judge DiFalco said: ‘£ Two of the general trusts still continue. The court makes no decision on the disposition of the remainders when such trusts terminate. All questions relating to those trusts are reserved for determination when the trust terms end. ” (11 Mise 2d 212, 219.)
Now Lavina has died, and it becomes necessary to determine the disposition of the corpus of her trust. The parties in interest are Louis’ widow who would participate in intestacy and the nephew and nieces who would take the entire corpus under the will.
One major fact has changed since Judge DiFalco’s 1958 decision. The three nephew and nieces have all now passed the age of 40 and they are all alive, having reached the age of 40 before Lavina’s death but after the deaths of Edith and Louis.
It is useful to look at the precise language of the residuary trusts for the lives of Edith and Louis. It is sufficient to look at that of Edith’s trust; that for Louis is essentially identical. (For convenience of reference I have inserted small Roman numerals in brackets at various points, [i], etc.) ££ twenty-fifth : * * * (a) I direct my said Executors and Trustees to invest and reinvest the principal of one (1) of such equal parts and to collect and receive the income thereof and [i] to pay the entire income of such part in quarterly payments during her life to my sister, edith s. barbee, [ii] Upon the death of my said sister edith, or if she shall have predeceased mo, then upon my death, I direct my said Executors and Trustees to pay the income of such one (1) equal part in equal shares to my nephew and nieces aforesaid, carolyn dalzbll, Robert o.j. streuber and Florence mitler, their survivors or survivor, until said Florence shall have reached the age of forty (40) years and [iii] thereupon to pay over said principal to said carolyn, Robert and Florence in equal shares per capita, [iv] the issue of any of them deceased to take per stirpes the share which the parent would have taken if living, [v] provided, however, that if upon the death of my said sister, edith, Florence shall have died or passed forty (40) years of age, such principal payment shall be made upon my said sister’s death; and [vi] provided further, that if, having survived my said sister, edith, Florence shall die before reaching the age of forty (40) years, such principal shall be distributed upon said Florence’s death.”
1. As a preliminary matter it is apparent that with respect to Lavina’s fund the language of the residuary clause cannot be applied literally to the case of Lavina surviving Edith, and *319 even living past the time when the nephew and nieces reach the age of 40, the case which has actually occurred, e.g., provision [ii] directs that upon Edith’s death the income is to he paid to the nephew and nieces until age 40; but on Edith’s death Lavina was still alive, all in income of her trust had to be paid to her; the corpus of Lavina’s trust was not yet part of the residuary. The provisions of [iii] that ‘ ‘ thereupon ’ ’ i.e. on Florence reaching the age of 40 the principal should be paid over to the nephew and nieces, and the provision of [v] that if upon Edith’s death Florence shall have died or passed 40 years of age such principal payment should be made upon Edith’s death, are impossible of literal application to the principal of Lavina’s trust because the principal of that trust was not yet available at those dates.
The defect, if it can be called that, is hardly more than a semantic one; it is merely the failure of the residuary clause to track literally the situation that has arisen. But I find the point helpful in the analysis of the Rule against Perpetuities problem.
The meaning of the will in the present context is plain enough. At most, it requires only a miniscule application of the doctrine that where the testator’s intent as manifested by the will and the testamentary scheme are plain, but the testator neglected to provide for a particular contingency, the court may give effect to the testator’s intent in the contingency which has arisen. (Matter of Thall, 18 N Y 2d 186, 192.) Indeed, it is doubtful that resort to this principle is really necessary.
The will directs that “ upon her [Lavina’s] death the corpus of said fund shall become part of my residuary estate.” Thus, the residuary clause governs only after Lavina’s trust becomes part of the residuary, i.e. after Lavina’s death. Hence, the applicability of every provision of the residuary clause must, as to the corpus of Lavina’s trust or indeed the other preresiduary trusts, either be deemed to be conditioned on the preresiduary trust having become part of the residuary, i.e. as to Lavina’s trust each contingency must be read with the obvious condition “ or upon the death of Lavina if that be later,” or separate parallel provisions must be implied for that contingency. (Matter of Thall, supra.)
2. The argument that the corpus must pass by intestacy rests on the well-established though much criticized principle that in determining whether a will violates the Rule against Perpetuities the courts look to what might have happened under the terms of the will rather than to what has actually happened. (Matter of Fischer, 307 N. Y. 149, 157; see Walsh, Future Estates in New *320 York, § 19, p. 102.) But there is a well-established exception to this rule, that where two alternative dispositions are stated in the will for different contingencies, and one of them is good and the other had, the good one will be sustained. In Matter of Irving Trust Co. (65 N. Y. S. 2d 824, 826-827), a case somewhat similar on the facts to the present case, Mr. Justice Boteim restated and applied this principle, saying: 11 Although it is well settled that events occurring after the beginning of the period prescribed under the rule against perpetuities ordinarily have no significance with respect to the validity of a limitation [citing cases], the fact that both the settlor’s niece and nephew are alive and over thirty-five at the present time is nevertheless here decisive. For, as is indicated in Walsh, Future Estates in New York (1931), § 30, p. 175: 1 In any case in which the future estate as limited may vest or the suspending trust be ended on the happening of any one of two or more different contingencies the New York courts follow the common law rule * * * that if the testator has separately limited the gift on each contingency, the gift is valid should the vesting take place on the happening of any such contingencies which must happen within the rule ’ ”.
This same principle was stated and applied in Matter of Trevor (239 N. Y. 6, 17) where the court said: “ The mere fact that the limitation over on another contingency which has not occurred is invalid does not invalidate that which is good.”
Applying this principle to our case, it appears that the contingency that Florence shall have passed 40 years of age by the time of the termination of the preceding estates was expressly provided for in [v] of the residuary disposition: u [v] provided, however, that if upon the death of my said sister, edith, Florence shall have died or passed forty (40) years of age, such principal payment shall he made upon my said sister’s death ”.
Beading this provision as I have as making the critical date the death of Lavina rather than the death of Edith when Lavina dies after Edith, i.e. the clause must he read as: “ provided, however, that if upon the death of my said sister, edith [or upon the death of Lavina, if that be later], Florence shall have died or passed forty (40) years of age, such principal payment shall he made upon my said sister’s death [or upon the death of Lavina, if that be later ”.] However we phrase it, it is clear that the testatrix had separately in mind and attempted to provide separately for the case where Florence should have reached the age of 40 by the time the interest of the nephew and nieces became a present possessory interest rather than a future interest. We thus have a case in which the testatrix has separately limited the gift *321 on various contingencies. The gift under [v] must happen, if it happens at all, within two lives in being, those of Lavina and Edith. Thus, this alternative is valid even if other alternative dispositions are invalid.
It is precisely for this reason that the present situation mandates a different result from that reached by Judge DiFalco in his decision in 1958. For this alternative [v] above was not before Judge DiFalco ; Florence was not yet 40 at the time that the predecessor estates before Judge DiFalco terminated. He had to consider the case therefore under alternatives [ii], [iii] and [iv] which involved more than two lives in being. And he pointed out (11 Mise 2d 212, 219): “ The remaindermen are not now known with certainty and hence the remainders cannot be accelerated. ’ ’ But unlike the situation before Judge DiFalco, the remaindermen are ‘1 now known with certainty. ’ ’
It follows that the corpus of the trust for Lavina established under paragraph twenty-second of the will must be paid to the nephew and nieces, Carolyn, Robert and Florence, in equal shares per capita.
3. As the testatrix died in 1945, the provisions of her will are governed by the law then in effect including New York’s then two life Rule against Perpetuities. Under that rule, the gift to the nephew and nieces of the corpus of Lavina’s trust was valid.
But in 1958 (incidentally after Judge DiFalco’s decision), New York abolished the two-life rule and essentially returned to the common-law rule of any number of lives in being. (L. 1958, chs. 152,153; Personal Property Law, § 11; Real Property Law, § 42; EPTL 9-1.1.)
The New York two-life rule had been the subject of great criticism by the students of the subject and by the Bar. Thus, Professor Gray in his famous work on the Rule Against Perpetuities said ([4th ed.], § 149): “ The limit of lives in being is a natural limit. The Rule strikes down only unusual provisions. But the limit of two lives, fixed by the New York Statute, is an arbitrary limit. It cuts through and defeats the most ordinary provisions. To allow future estates, and yet to confine them within bounds so purely arbitrary, would seem to be an invitation to litigation. And so the event has proved.”
Professor Walsh in 1931 referred to the two-life rule as “ arbitrary and unreasonable” with “ resulting injustice to those who have lived in New York during the one hundred and one years that this change has been in effect ”. (Walsh, Future Estates in New York, p. 205.) He said that “ the 1 two lives ’ *322 rule is responsible for * * * departures from good sense and reason, with results that in more cases than not, reasonable and praiseworthy wills are defeated.” (ip. 207).
Presumably criticisms such as these led to the abolition in 1958 of New York’s two-life rule and the adoption of the any number of lives in being rule. Under the latter rule, there would be no difficulty with any of the provisions of this will so far as the Rule against Perpetuities is concerned. This will is precisely the sort of natural disposition which the common-law rule and the present New York rule would permit and as to which there were difficulties — like the present litigation and the one before Judge DiFalco — under the former two-life rule.
For the future, the two-life rule can only be applied to the wills of testators who died before 1958. Any determination made as to the two-life rule cannot influence the drafters of future wills. In deciding cases under the two-life rule, the courts are now merely liquidating the remnants of a discarded rule of law.
Given a case such as the present, where a disposition made by a testator who died before 1958 would clearly be valid under the present law but there is a reasonable doubt as to whether the disposition would be valid under the governing previous two-life rule, I think it is sound public policy to resolve such doubts in favor of the validity of the disposition and thus carry out the testator’s intent rather than to defeat the testator’s intention by applying with Draconian rigor a discarded rule of law whose effect in the present situation was, at most, doubtful.
4. The objection that the income has been improperly paid from the Davina trust to the nephew and nieces appears to be without foundation in fact and is dismissed.