S. Samuel Di Falco, S.
In this application for the judicial settlement of the trustees’ account, the court is asked to identify the remainder beneficiaries of the trust. Article twelfth of the testator’s will creates several trusts from the residuary estate. In relevant part article twelfth reads as follows: "II. I give, devise and bequeath three (3) of such equal parts to my Trustees hereinafter named, in trust, however, for the following uses and purposes: To invest and reinvest the same so that it shall produce an income and to apply the net income therefrom quarterly to the use of my niece, anna g. abrams, daughter of my deceased sister, Sarah Green, during her life and upon her death and during the life of the youngest lineal descendant of my said deceased sister, Sarah Green, who was living at the time of my death and who shall survive the said Anna G. Abrams, to apply the income thereof to the use of the lineal descendants of the said Anna G. Abrams, as they shall from time to time exist, in equal shares, per stirpes and not per capita; and upon the death of such youngest lineal descendant of the said Sarah Green, or upon the death of all lineal descendants of the said Anna G. Abrams during the life of such youngest lineal descendant of the said Sarah Green, or upon the death of the said Anna G. Abrams if no lineal descendant of the said Sarah Green living at the time of my death shall survive the said Anna G. Abrams, to convey, transfer and pay over the principal thereof, in equal shares, per stirpes and not per capita, to the lineal descendants then surviving of the said Anna G. Abrams, and in the absence. of such lineal descendants the remainder, if any, to be disposed of as directed in the succeeding Article Thirtenth [sic] hereof.” The facts in this case relate a tragic story of homicide and despair. Anna Abrams was the testator’s daughter and the first life income beneficiary of the *609 trust. Upon her death on July 21, 1970 James Abrams, Anna’s only child, became the next income beneficiary. James was married to one Salwa Merhige-Abrams at the time, and they had two infant children, Melissa and Jack. On July 14, 1973, as reported in the Miami Herald newspaper, Salwa MerhigeAbrams shot and killed her husband James and their two children and subsequently committed suicide by taking an overdose of sleeping pills. The trustees have taken the position that there being no lineal descendants of Anna, the remainder of the trust should now be paid to the charities named in article thirteenth. The matter had been set for a hearing on the issue of whether or not James’ children had survived him. If such were the case, argues objectant, then the children as lineal descendants of James would have been entitled to the remainder. Claim is made to the remainder in behalf of the estates of the children who were killed.
In this motion for summary judgment, the petitioners take the position that article thirteenth has been misinterpreted throughout the proceedings to date by both sides. It is contended now that the trust did not terminate with the death of James Abrams but instead terminated upon the deaths of the children. This being the case it is argued the remainder must be distributed to the charities in accordance with article thirteenth.
The objectants resist this motion on the grounds: (1) that the residuary trust violates the Rule Against Perpetuities as it existed prior to 1958; and (2) that at this late hour the petitioners should be estopped by what is termed a "repudiation of their pleadings”.
Examination of the original pleadings reveals that the petitioners’ original position that the charities are to receive the remainder has not changed. It is not enough to defeat this motion, that the petitioners now allege a different measuring life for the trust. Before proceeding with any factual determination relating to the survival of the children of James Abrams, the court gave ample opportunity for both sides to submit memoranda on the issue of construction. The original petition and objections are deemed amended. Construction of the will is a question of law that may be determined on a motion for summary judgment.
It follows that whether or not James survived his children is no longer the critical issue as all parties at first believed. Upon closer scrutiny of article twelfth the question before *610 the court in the first instance involves the Rule Against Perpetuities.
Anna G. Abrams is clearly the primary life beneficiary and also the first measuring life of the trust. The second measuring life according to the express terms of the will must be a person who was the youngest lineal descendant of Sarah Green alive at the time of the testator’s death, and who survived Anna G. Abrams.
When George Toeplitz died the lineal descendants of Sarah Green were Anna Abrams, her daughter; James Abrams, Anna’s son; Ruth Walters, Sarah’s daughter; John Green Walters, Ruth’s son; David Henry Walters, another son of Ruth Walters; Gertrude Guthman, another one of Sarah’s daughters; and Rosalie Green, Sarah’s granddaughter. The youngest of these was David H. Walters who was 17 at the time of the testator’s death in 1951.
In 1951, New York was bridled with what was known as the two-life Rule Against Perpetuities. The New York two-life rule has been the subject of great criticism by legal scholars. The objectant contends that at the time of the testator’s death, there were more than two measuring lives of the trust. The objectant argues that it was unknown whether or not David H. Walters, the youngest lineal descendant of Sarah, would survive Anna and become the second measuring life. If he had predeceased Anna, then the next youngest would be considered as the second measuring life and so on, and that not until Anna’s death could a youngest lineal descendant be determined.
The objectant urges the court to apply the constructional device of excision in order to carry out as far as possible the intent of the testator. "[W]hen it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such construction will be adopted as will prevent intestacy, either partial or total, as the case may be.” (Kalish v Kalish, 166 NY 368, 375; see, also, Matter of Durand, 250 NY 45, 53.)
The objectant says that this trust is in violation of the two-life rule, but urges that it be saved by excising what he considers to be the invalid portions. Relying on Kalish v Kalish (supra), and Matter of Holmes (26 AD2d 151), objectant asks the court to construe the trust as having terminated upon the death of Anna Abrams or, in the alternative, upon the death of Gertrude Guthman who was alive at the testa *611 tor’s death but was the next lineal descendant of Sarah to die after George Toeplitz died.
In arriving at a decision as to which is the second measuring life under this trust, the reason why the Legislature created the Rule Against Perpetuities must be considered. The rule is directed against both remoteness of vesting and the suspension of the absolute ownership of personalty (Banker’s Trust Co. v Firth, 177 Misc 797). In 1951 suspension was limited to two lives in being at the time of the testator’s death. As has been said many times before, the testator’s intent is the prime consideration of the court (Matter of Fabbri, 2 NY2d 236). A careful consideration of the will reveals that the testator created several trusts from the residuary (in addition to article twelfth II) benefiting specific family lines. At no time does he indicate an intent for the funds from individual trusts to cross family branches. If any one of the trusts created in article twelfth should terminate then it appears that the remaining principal must be distributed to charity in accordance with article thirteenth.
In Matter of Bahrenburg (130 Misc 196, 197, affd 214 App Div 792, affd 244 NY 561) the testator made the following direction in his will: "Upon the death of my said wife or upon my said wife marrying again, if any youngest child then living shall have arrived at the age of twenty-one years, or as soon after the happening of either of said events as my youngest child then living shall arrive at the age of twenty-one years I direct that my said trustees shall convey all the remaining part of my estate, hereinbefore conveyed to them, together with any income of the same remaining in their hands, share and share alike among my children then surviving and the issue of any child who may have then deceased, such issue taking the share to which such deceased child would be entitled if living.” Surrogate Wingate held: "This provision is attacked as endeavoring to create an unlawful suspension of the ownership of personal property. A careful analysis, however, will disclose that the longest period of suspension would be the lifetime of the wife and the lifetime or minority of the youngest child of decedent living at the death of the wife, i.e., one life in being determined at the testator’s death, and a second life in being at testator’s death but determined at the death of the life tenant. This suspension, as to principal, seems to be valid. (Van Cott v Prentice, 104 NY 45; Schermerhorn v Cotting, 131 id. 48; Chaplin Susp Alien [2d ed] § 79.)”
*612 Analyzing the situation now before the court from the date of the decedent’s death in light of the circumstances which existed at that time, it is this court’s opinion that the trust created did not suspend the power of alienation for more than two lives in being. It may be that one of the two measuring lives could not be determined at the time of the testator’s death, but it is also evident that the duration of this trust does not extend its period beyond the lives of two persons who were actual lives in being at the time of testator’s death. The identification of the second measuring life may have been postponed, but ownership of the trust property is not postponed beyond the Rule Against Perpetuities.
The two-life rule is one which was ill-conceived, arbitrary and unreasonable, but which returns to haunt us time and again in its attempt to defeat reasonable and praiseworthy wills. My former colleague, Surrogate Silverman, in Matter of Schuette (63 Misc 2d 315, 322) succinctly stated the rule which should be followed when deciding cases under the two-life rule: "Given a case such as the present, where a disposition made by a testator who died before 1958 would clearly be valid under the present law but there is a reasonable doubt as to whether the disposition would be valid under the governing previous two-life rule, I think it is sound public policy to resolve such doubts in favor of the validity of the disposition and thus carry out the testator’s intent rather than to defeat the testator’s intention by applying with Draconian rigor a discarded rule of law whose effect in the present situation was, at most, doubtful.”
It is the ruling of this court that this trust was measured by the lives of Anna Abrams and David Walters, the youngest lineal descendant of Sarah Green, and that this trust terminated upon the deaths of James J. Abrams and his infant children, Melissa and Jack. Since there are no surviving lineal descendants of Anna G. Abrams, the trust in accordance with the express terms of the will must be distributed to charity. The issue before the court as to whether Jack and Melissa survived their father is now irrelevant.
Motion for summary judgment is granted and the objections to the account are dismissed.
Submit decree settling the account and construing the will in accordance with this decision.